# COLEMAN v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 109. Submitted November 23, 1893. — Decided March 5, 1894.

In an action brought to recover fees as assistant district attorneys in suits to vacate patents of public land, it being conceded that the complainants did not expect, during the period in which the services were performed, that the United States would compensate them, and that they looked for recompense to the clients who had retained them, and that the use of the name of the United States had been consented to on the application of the plaintiffs with the understanding that they were to receive no compensation from the United States, and that on the first intimation that they might look to the United States for compensation, their formal employment was at once terminated, *held*, that there was no contract, express or implied, between them and the United States, for a breach of which judgment should be rendered against the latter.

THE case is stated in the opinion.

*Mr. Edwin B. Smith* and *Mr. T. H. N. McPherson* for appellants.

*Mr. Assistant Attorney General Dodge* and *Mr. George H. Gorman* for appellees.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims, sustaining a demurrer of the defendants to the claimants' petition, and dismissing the petition.

It appears that in the year 1843 the government of Mexico granted to Miranda and Beaubien, citizens and residents of Mexico, a tract of land situated in Mexico. After the territory which included this grant was brought by treaty with Mexico within the jurisdiction of the United States Congress, in the year 1860, passed an act confirming the grant to Miranda and Beaubien. Subsequently, Miranda and Beaubien

conveyed these lands to the Maxwell Land Grant and Railway Company, and thereafter the lands were surveyed by the government of the United States, and a patent for them issued to the said company.

The petitioners allege that the grant from the Mexican government contained about one hundred and twenty-four thousand acres, but that the lands, included within the United States survey, embraced about two million acres, lying both in the Territory of New Mexico and the present State of Colorado, and that the excess included in said survey belonged to the United States, and was of great value, namely, of the value of two million dollars.

The petitioners further state that upon portions of the lands included in said fraudulent survey many persons had become actual settlers and residents prior to the confirmation of the survey, and that some of said settlers, who claimed that their right to possession had been invaded by the land grant company, determined, in 1881, to commence legal proceedings to test the title of that company to so much of said lands as had been fraudulently or mistakenly conveyed to the company by the United States. The petitioners were employed by these settlers to take the necessary proceedings, and they, accordingly, pursued an investigation into the facts connected with the said alleged fraudulent survey, and expended much time and labor in so doing.

In order to facilitate their proceeding the petitioners, on behalf of the settlers by whom they had been retained, applied to the then Attorney General of the United States for leave to bring suit in the name of the United States to vacate the patents which had been theretofore granted to the Maxwell Land Grant Company.

They allege that they were duly authorized to begin suit for that purpose, and that, in pursuance of such authority, they drew and prepared two bills in equity, one to vacate and set aside the patent so far as it embraced lands in New Mexico, the other for like purpose in respect to the lands within the State of Colorado. They further state that they filed one of these bills in the United States Circuit Court for the Southern

District of Colorado. The parties defendant to said bill were the Maxwell Land Grant Company and others, on whose behalf an answer was filed. The court by order fixed the time within which the United States as complainants and the defendants should close the taking of their testimony, to wit, in September, 1883.

It is further stated that, in the preparation for the trial of said case, the petitioners were required to expend time and money in the examination of maps and surveys of record in the various departments, and to go to New Mexico and Colorado, in order to get the names of proper persons to make defendants, and the names of witnesses. They allege that they were jointly employed by the settlers for the purpose aforesaid, and were to share equally in the moneys paid in compensation; but no sum was fixed or agreed upon as to the amount which they were to receive for their services, and that only the sum of $177 was paid to or received by them in compensation for services, or in reimbursement for money expended. In the fall of 1883 they were notified by the settlers that they could not furnish any more money to defray the expenses of the trial of said causes, neither could they pay attorneys any sum in compensation for services, for the reason that almost all the lands embraced within said fraudulent survey belonged to, and would revert to, the United States, and not to the settlers, in case of a successful result of said litigation; and that, as the benefits would result to the United States, they should bear the expenses of the litigation.

They further allege that, on August 16, 1882, they had been, by the then Attorney General, appointed special district attorneys, without compensation, to prosecute said suits to vacate said patent; that, on receipt of the notice aforesaid from the settlers, they notified the duly constituted authorities of the United States that the settlers upon the disputed lands would not pay any of the expense connected with the prosecution of said suits, and requested that such expense should be borne by the United States.

Thereupon and thereafter the United States refused to

further employ them, but employed other counsel, and took and appropriated to themselves all the benefit and advantages of the labor so rendered and the expenses so expended by them.

The petitioners claim that the United States are indebted to them, for such service and expenses, in the sum of $11,500.

The appellants assign for error the judgment of the court below, in sustaining the government's demurrer, and in dismissing their petition.

The appellants contend that the facts disclosed in their petition constitute an implied contract on the part of the United States to pay the value of the services rendered and of the expenditures made in furtherance of a suit in which they were beneficially interested. Assuredly there may be a state of facts from which an implied contract or promise to pay for services rendered may be justly inferred, and we do not doubt that, in such a case, where the United States are parties defendant, the Court of Claims have jurisdiction, under section 1079 of the Revised Statutes, to entertain a suit and render judgment. *United States* v. *Russell*, 13 Wall. 623; *Salomon* v. *United States*, 19 Wall. 178; *Hollister* v. *Benedict &c. Manfg. Co.*, 113 U. S. 59; *United States* v. *Palmer*, 128 U. S. 262. But we think that a promise to pay for services can only be implied when the court can see that they were rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited.

It is a conceded fact in the present case, by express allegation in the petition, that the claimants did not expect, during the period in which the services were performed, that the United States would compensate them; that they looked for recompense to the clients who had retained them; and that their use of the name of the United States in the litigation was consented to on their own application, and with the express understanding that they were to receive no compensation from the United States. On the first intimation that they might, in the matter of compensation, exchange their clients for the United States, their formal employment was at once

terminated. For their past services they are entitled to recover from the settlers who employed them, but the admitted facts clearly show that the United States are under no express or implied obligation to answer for a breach of contract between the appellants and their clients.

It is unnecessary to pursue the subject further. The court below committed no error in dismissing the claimants' petition, and the decree is

*Affirmed.*