KARR v. STEVENS et al. (No. 7133.)*

Court of Civil Appeals of Texas. Austin. June 29, 1927.

Rehearing Denied July 20, 1927.

1. Brokers ⊜7—Employment and agreement to pay real estate agent commissions may be implied from acceptance of benefits of service with knowledge of expectation of payment.

Employment and agreement to pay real estate agent commissions may be implied from circumstances, as where principal accepts benefits of service with knowledge of expectation of payment.

2. Brokers ⊜88(2)—Whether real estate agent's commission was due on signing contract and whether purchasers were to pay it held for jury.

In real estate agent's action for commission, whether agent informed purchasers before signing contract that they were expected to pay broker's commission, whether his commission became due on procuring contract or only in event that sale was finally consummated, or whether purchasers were not to pay commission, held questions for jury.

3. Brokers ⊜49(2)—As regards broker's right to commissions, contract held one for sale of land, and not option.

As regards broker's right to commissions, contract by which one party agreed to sell, reserving vendor's lien, certain land at specified price, and second party agreed to buy such land, specifying manner, held to constitute binding contract for sale and not option, regardless of provision therein for liquidated damages and fact that on breach liquidated damages were paid.

4. Specific performance ⊜58—Vendor and purchaser ⊜3(4)—Land sale contract providing for liquidated damages is one of sale rather than option, waiving specific performance.

Land sale contract fixing liquidated damages for breach and requiring party not breaching to accept such sum in satisfaction of obligation are contracts of sale rather than options, and effect of such stipulation is to bind party not breaching to accept such sum in satisfaction, and equitable remedy of specific performance is deemed to have been waived.

5. Brokers ⊜49(1)—That land sale contract is incapable of specific performance does not preclude broker from recovery of commission.

Fact that land sale contract is incapable of specific performance as between vendor and purchaser does not preclude real estate agent from recovering commission unless his contract of employment requires him to procure land sale contract capable of being specifically performed.

6. Brokers ⊜49(1)—Real estate agent is entitled to commission on procuring binding contract of purchase or sale unless he otherwise contracts.

Real estate agent's duty is fulfilled and he is entitled to commission on procuring binding contract of purchase or sale unless he has otherwise contracted.

Error from District Court, Coleman County; J. O. Woodward, Judge.

Action by J. L. Karr against W. J. Stevens and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Jenkins & Miller, of Brownwood, for plaintiff in error.

Dibrell & Snodgrass, of Coleman, for defendants in error.

BLAIR, J. The parties will be designated appellant and appellees. Appellant sued appellees to recover a broker's commission, alleging that he had listed with him certain real estate at a net price to the owner of $20 per acre; that Hubert Shores assisted him in the matter; that they interested appellees

in the purchase of the land, advising them that the price was $20 per acre net to the owner, and that their agent's commission would have to be paid in addition thereto; that after being so advised appellees sought and accepted their services, and through their efforts a written contract was entered into between the owners of the land and appellees whereby they purchased the land at $20 per acre, the owners agreeing thereby to convey the land on or before a certain date for the price stipulated; that thereupon appellees became legally, justly, and equitably obligated to pay them the usual and customary commission of 5 per cent. on the sales price of the land; that appellees had in some way settled with Hubert Shores for his part of the commission, but that they owed appellant his one-half of the commission or the sum of $3,124. Appellees answered that they never employed appellant or any one else to sell the land to them; that if under any circumstances alleged there was an implied contract on their part to pay a broker's commission, it was only in the event a sale should be finally and fully consummated, which was not done; and that, although a contract of sale was entered into, it was a mere option to purchase and proposed that either party could by the exercise of the option withdraw from the contract by paying to the others the sum stipulated.

Appellant proved the material allegations of his petition—that is, he testified that he submitted the property to appellees at a price of $20 net to the owners, and advised them that the broker's commission must be paid in addition thereto; that appellees stated then that they did not so understand the matter, but that they later with full knowledge of his contention for a commission signed the contract of purchase, the essential portions of which are as follows:

"(1) First party agrees to sell and convey by good and sufficient general warranty deed, with vendor's lien reserved, to second parties 6,248 acres of land known as the Coggin Clear Creek ranch, lying about ten miles southwest of Brownwood, in Brown county, Texas, for a consideration of $20.00 per acre, which on said estimated acreage aggregates the sum of $124,-960.00, one-fourth of which sum is to be paid in cash as hereinafter specified and the balance of which sum or consideration is to be secured to be paid as hereinafter specified.

"(2) Second parties agree to purchase said lands and premises at the said average price of $20.00 per acre on the estimated acreage aggregating the sum of $124,960.00, and to pay therefor as follows: One-fourth of the total purchase price to be paid in cash by second parties at Brownwood, Texas, at the time of consummation of said purchase by the execution and delivery of proper conveyance first party, Ben F. Stone, independent executor and trustee, to second parties, and delivery of full, complete and exclusive possession of the lands and premises so purchased to second parties on September 1, 1925; the balance of the pur-

chase price of said lands and premises is to be secured to be paid by the execution and delivery by second parties of five nonnegotiable vendor's lien notes, payable to first party, at Coggin National Bank, Brownwood, Texas, notes Nos. 1, 2, 3, and 4 to be each for one-eighth of the balance of said purchase price after deducting the one-fourth cash payment and note No. 5 to be for one-half the balance of the purchase price after deducting the one-fourth cash payment; said notes to be due and payable on or before December 1, 1927, 1928, 1929, 1930, and 1935, respectively, and each to bear interest from September 1, 1925, at the rate of 7 per cent. per annum.

"(3) It is understood that second parties are purchasing said lands and premises with the purpose of subdividing and selling the same out in small tracts and it is therefore further agreed that the said land shall be and is hereby classified according to value as follows:

"(4) It is expressly agreed that until deed shall have been executed and delivered and possession given to second parties of said lands and premises, first party shall continue to keep the residence, buildings and improvements on said lands and premises fully insured against fire and tornado in good fire insurance companies, at his own cost and expense.

"(5) It is understood that the second parties shall have the right with their employees, agents, surveyors, etc., to enter upon said lands and premises at any time for the purpose of surveying said lands and premises and with a view to subdivision thereof and for cutting out roadways and surveying lines and putting up markers and driving stobs and stakes, etc., and for the purpose of showing said lands and premises to prospective purchasers.

"(6) As evidence of their good faith, second parties have this day placed in the Coggin National Bank, Brownwood, Texas, United States government bonds of the face value of $5,000.-00, and it is understood and agreed that a copy of this contract shall be placed in said bank and that in the event second parties shall fail or refuse to comply with their agreement as hereinbefore set out to purchase said lands and premises without any transfer on the part of the first party, that the said government bonds shall be delivered by said bank to first party and shall be accepted by him as his full liquidated damages for breach of said contract by second parties, and it is further expressly agreed that if first party shall breach the foregoing contract and refuse to complete the sale of said lands and premises to second parties, that second parties shall be entitled to recover as their liquidated damages by reason of such breach of contract from the first party, the sum of $5,000.00, which is hereby agreed upon as the amount of damages that will be sustained by second parties through breach of this contract by the first party."

One of the appellees testified as follows:

"In that conversation he did state that the price of that land was $20 net to the college; yes, I knew at that time that they were wanting $20 an acre net to the college. It was after that time that we executed the written contract. At the time we executed the contract—written contract—I knew that Mr. Karr and Mr. Shores were expecting me and my

brothers to pay a commission; yes, that is what they said. At that time, in Brownwood, Mr. Stone made the statement that the college was not to pay any commission—I think he did —there wasn't any misunderstanding then about who was to pay the commission. That was before any written contract was ever executed. At the time the written contract was executed, so far as I know so far as I now believe, all the parties understood that the college wasn't to pay any commission. Yes; I didn't understand that the purchasers were to pay it, but I understand they claimed and wanted us to pay it. I entered into the contract knowing Mr. Karr and Mr. Shores were expecting us to pay the commission."

Appellees paid the $5,000 stipulated in the contract in lieu of performance thereof.

At the conclusion of the evidence, the trial court instructed a verdict for appellees: First, because they did not actually buy the land and finally and fully consummate the contract of purchase; and, second, because the contract made was a mere option to buy on the part of appellees and not a binding contract of sale capable of being specifically enforced, and, the proof being undisputed that appellees exercised their right to pay the sum stipulated in lieu of performance, the contract was at an end. We sustain neither conclusion.

The facts and circumstances alleged and proved by appellant were such, if believed by the jury, as would in law and in equity imply a contract or obligation on the part of appellees to pay him for the services rendered.

[1] In 9 C. J. 556, a well-settled rule applicable here is stated as follows:

"The employment and consequent agreement to pay commissions may also be implied from the circumstances; as where the principal accepts the benefits of the broker's services with the knowledge that he expects to be paid therefor."

Or, as is further stated at page 586 of the same authority:

"A real estate broker representing only one party cannot recover commissions from the other. Thus, where a broker is employed by the owner of land to sell the same, the purchaser is not liable for the broker's commission, unless he has agreed to conditions of sale which include the payment of the commissions by the purchaser, or unless he has agreed with the broker to pay them."

In Harris v. Van Vranken, 32 N. D. 238, 155 N. W. 65, it is held that where the broker informs purchaser that the terms of sale are to include broker's commission, purchaser is liable for it. See, also, Goode v. Sears (Tex. Civ. App.) 226 S. W. 463; Huff v. McMichael, 60 Tex. Civ. App. 379, 127 S. W. 574; Coleman v. United States, 152 U. S. 99, 14 S. Ct. 473, 38 L. Ed. 368; Taylor v. Deseve, 81 Tex. 251, 16 S. W. 1008.

In Simkins on Contracts, at page 368, it is said:

297 S.W.—19

"Implied contracts are such as reason, justice, and the law presume one has promised to perform. In a word, the law implied the promise where duty creates the obligation. There may be no direct expression of intention, but the intention is inferred from the acts or conduct of the parties. The promise may be implied or the request may be implied, or both. In either event the law implies the contract—citing Fordtran v. Stowers, 52 Tex. Civ. App. 226, 113 S. W. 631."

[2] Appellees insist in this connection that appellant was to have received a commission only in the event the sale was actually, finally, and fully consummated, and that under his own evidence such was the contract. We do not interpret appellant's testimony as making any such admission, but, to the contrary, he testified that he considered the sale made and commission due in so far as he could control negotiations immediately upon his bringing the parties together and causing them to sign the contract for the sale and purchase of the land upon terms mutually agreed to by both purchaser and seller. And if the jury believed his version of the matter, then appellees would be liable.

In 9 C. J. 591 and 592, a well-settled rule is stated as follows:

"A commission ordinarily becomes payable on completion of the transaction which the broker was employed to negotiate, unless there is a stipulation in the contract of employment to the contrary. If by the contract of employment the broker is merely to find a customer who is able, ready and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction. Thus a broker employed to find a purchaser or a vendor or to exchange ordinarily becomes entitled to a commission on the execution of a contract of purchase or sale or exchange, although without any fault on the part of the broker the contract is never carried out, unless there is a stipulation, express or implied, making his right to compensation depend on the performance of the contract or the happening of some other event." Williams v. Phelps (Tex. Civ. App.) 171 S. W. 1100; Newton v. Dickson, 53 Tex. Civ. App. 429, 116 S. W. 143; Davison v. Wills (Tex. Civ. App.) 96 S. W. 634.

So, under the rules above announced, the contention of appellant that he informed appellees before they signed the contract that they were expected to pay, in addition to the $20 per acre purchase price for the land, also the broker's commission, and that his commission became due immediately upon his procuring the contract between the parties, and the contention of appellees that the commission would be due only in the event the contract of sale was finally and fully consummated, and that it was understood at the time they signed the contract that they were not to pay a commission, were all questions of fact for the jury, and the trial court erred in not submitting these questions to the jury.

[3, 4] The contract in question is a binding contract for the sale of the real estate by the owner to appellees, and not a mere option as construed by the trial court. Contracts for the sale of real estate by the terms of which is fixed a stipulated sum as the estimated amount of damages that will result to either of the parties by reason of the other's breach thereof, and the terms of which either expressly or impliedly bind the party not breaching to accept such sum in satisfaction of the obligation of the proposed purchase or sale, is nevertheless a contract of sale rather than an option, and the effect of the stipulation is to bind the party not breaching to accept such sum in satisfaction of the obligation of the other party, and the equitable remedy of specific performance is deemed to have been waived. Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Huffhines v. Bourland (Tex. Com. App.) 280 S. W. 561; Texlouana Producing & Refining Co. v. Wall (Tex. Com. App.) 257 S. W. 875.

[5, 6] The fact that the contract procured by the broker is incapable of specific performance as between purchaser and seller does not preclude the broker in his right to his commission unless by the terms of his contract of employment he expressly agrees to procure a contract capable of being specifically performed. His duty is fulfilled when he procures a binding contract of purchase or sale, unless he has otherwise contracted. 9 C. J. 608; Jackson v. Biggerstaff (Tex. Civ. App.) 168 S. W. 42; Mathews v. Realty Co. (Tex. Civ. App.) 167 S. W. 764; Realty Co. v. Broussard (Tex. Civ. App.) 159 S. W. 153; Francis v. Foster (on certified question) 113 Tex. 521, 260 S. W. 1023.

For the reasons stated, the cause is reversed and remanded for trial.

Reversed and remanded.