GhebN, Judge,
delivered the opinion of the court:
Plaintiff brings this suit to recover $50,000, which he alleges is due him for services performed for the United States Shipping Corporation. The defendant denies that plaintiff had any contract with the Shipping Corporation or rendered any service to it.
The case is a very peculiar one. In May, 1918, the plaintiff, who was skilled in the launching of vessels, addressed a letter to the United States Shipping Board at Washington with regard to his services and skill in the sideway launching of vessels and the use of a device perfected by him. A reply led him to go to Washington and interview Mr. Edward N. Hurley, of the Shipping Board, who sent him to Mr. Thomas Cornbrooks, the president of the Merrill-Stevens Shipbuilding Corporation, of Jacksonville, Florida, who at that time was in Washington and who had previously addressed a communication to the Shipping Board requesting that it send an experienced man in side launching to Jacksonville, which was the headquarters of the fourth construction district of the Shipping Board, stating in substance that such a man was needed from May 20 to 25 and that all expenses would be borne by the company.
The plaintiff had been for many years engaged in ship construction, and the evidence leaves no doubt as to his skill in launching vessels. He had developed certain devices for use in sideway launching and also a device used in end launching, which had very decided advantages. Also the launching ways which were constructed according to his directions were more economically constructed, the launching was made safer, and the cost of each launching greatly reduced. The yards of the Merrill-Stevens Cor *735 poration were constructed for sidewise launching, but while this method had been known for some time on the Great Lakes and in the Mississippi Valley it had been little used on the Atlantic coast, and the workers for that company were unfamiliar with this method of launching. This corporation had no one prior to plaintiff’s arrival who was qualified to direct the launching of its vessels.
When the plaintiff arrived at Jacksonville, he was met by Mr. W. C. McGowan, district supervisor of the Emergency Fleet Corporation for the fourth district, and Mr. A. M. Main, vice president of the Merrill-Stevens Shipbuilding Corporation, to whom he had a letter. The plaintiff placed himself under the direction of Mr. McGowan, who thereafter had complete control of all of plaintiff’s work and operations so far as involved in this case, and by McGowan’s order plaintiff rebuilt the structure for launching in accordance with his plans and devices. The launching of the first vessel was so successful that plaintiff’s devices and method of launching were approved by McGowan, and plaintiff was put in charge of launching operations generally. In one instance the Emergency Fleet Corporation had attempted to launch a ship at the yards subsequently acquired by the St. Johns Eiver Shipbuilding Corporation at Jacksonville, Florida, but its efforts were unsuccessful and plaintiff was directed by the district supervisor to take charge thereof. In a short time thereafter plaintiff had the vessel released and successfully launched. Thereupon, he was directed by the district supervisor, to reconstruct all of the ways of the St. Johns Corporation according to his own plan, and on these ways so reconstructed with the use of his launching devices other vessels were successfully launched. In short, all of plaintiff’s actions and methods were expeditious, economical and highly successful.
The plaintiff was put on the pay roll of the Merrill-Stevens Shipbuilding Corporation and received pay at the rate of $65.00 a week while working in its yard, and was also paid by the St. Johns Shipbuilding Corporation $75.00 a week. In the yard of this corporation he was superintendent of ways. Plaintiff was never carried on the pay rolls of the United States Shipping Board either at Jacksonville *736 or at Washington. At various times be discussed the question of bis pay with McGowan, and a memorandum was made of a rate agreed upon between plaintiff and McGowan, which was put in writing for the purpose of forming the basis of a contract in reference thereto. This memorandum was signed by plaintiff, but the contract to which it referred never was executed, and there is nothing in the evidence to show whether it was ever drawn up. The death of McGowan in November, 1918, prevented anything further being done.
We think it is clear that there was an understanding between McGowan and the plaintiff .that he was to receive compensation from the Shipping Board and that the Shipping Board had notice thereof. We can not set out in detail all of the evidence that bears thereon, but it will be observed that plaintiff came to McGowan from the Shipping Board in the first instance, having been sent on request of the president of the Merrill-Stevens Corporation. He was at all times under McGowan’s direction. The Merrill-Stevens Corporation had written requesting that a man capable of superintending sidewise launching be sent. The defendant called attention to the fact that in the same letter it was stated that all expenses would be paid. From all of the circumstances in the case we think by this was meant and understood by both parties that someone in the employ of the Shipping Board should be sent but whose expenses, as distinguished from his salary, would be borne by the Merrill-Stevens Corporation. It is true that the Merrill-Stevens Corporation afterwards paid him $65.00 a week, and for his work with the St. Johns Corporation he was paid $75.00 a week, but when common laborers, as the evidence shows, were getting that much or more in the shipyards at that time it can not reasonably be contended that anyone on the Shipping Board expected a high-class expert was to receive less than the pay of a common laborer. When the Shipping Board sent the plaintiff to the shipyards, it expected that he would be employed in directing the launching of vessels if employed at all. The evidence abundantly satisfies us that the Shipping Board had notice of his employment. The *737 fact that he was used for about a year and a half would, ■considering the reports that are made in the usual course •of business, be sufficient alone on this point, but there is other more definite evidence. He received money for part of his expenses from the Shipping Board, which also paid some bills for his weekly salary. An attempt is made to explain this and show that these items were probably charged back to the shipbuilding companies, but these explanations, even if accepted, only make it the more evident that the Shipping Board had notice of his employment and that he was only getting from the shipbuilding companies the wages of a common laborer. Moreover, the plaintiff while on the pay roll of one of the two companies named at McGowan’s directions did work for other shipbuilding companies from which he received no pay whatever. Without going further into the details of the evidence, we think it amply justifies the finding that we have made that the Shipping Board had notice that he was doing work for it for which he would be compensated only in a small part by what he received from the shipbuilding companies, with the expectation he would receive additional compensation from the Shipping Board.
It is urged on behalf of defendant that under all of the contracts involved in this case the duty was cast upon the builders of the vessels to launch them, and that the launching therefore was no concern of the Shipping Board, and that it was not likely or reasonable that they would have any understanding or expectation that the Government was to pay for any part of the work connected with the launching. Under ordinary circumstances this argument would have much force, but the circumstances were not ordinary. The vessels were needed for war purposes. It is a matter of common knowledge that the Government was in pressing and dire need of them. If they could not be obtained quickly, they might be of no use whatever, and the interest of the Government in obtaining them quickly was far greater than that of the shipbuilding companies. The Government was putting immense sums into its shipbuilding program, and the expenditure of a few thousands for the purpose of *738 getting the ships quicker was, under the circumstances,, quite reasonable.
The evidence does not show that the plaintiff had any contract with the Shipping Board. On the contrary, it appears that the contract was never completed, but under the circumstances we think there was an implied contract on the part of the Shipping Board to pay the plaintiff. In Coleman v. United States, 152 U. S. 96, 99, the Supreme Court said:
“Assuredly there may be a state of facts from which an implied contract or promise to pay for services rendered may be justly inferred, * * *. But we think that a promise to pay for services can only be implied when the court can see that they were rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited.”
The statement made in the last sentence quoted above being true, the converse thereof would be also correct and applies to the situation in this case. Plaintiff had a reasonable expectation that the Shipping Board would pay for his services over and above what he received from the shipbuilding companies, and while these compames were benefited by his work to some extent there is also no question but that the Government greatly benefited thereby. Such being the case, an implied contract arose on the part of the-defendant to pay the fair and reasonable value of plaintiff’s-services.
We have found that the fair and reasonable compensation for the services rendered by the plaintiff would be $20,000.00.. Plaintiff received approximately $5,495.00 to apply on his-compensation. Deducting the amount of this payment, we find that he is entitled to recover $14,505.00, for which judgment will be entered in his favor.
Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.
Geaham, Judge, took no part in the decision of this case..