**WEINBERG et al. v. GOLDENBERG'S, Inc., et al.**

**Equity No. 54164.**

United States District Court
District of Columbia.

Dec. 14, 1948.

Aaron W. Jacobson and J. Hendren Holmes, both of Washington, D. C., for movant.

354

Arthur P. Drury, of Washington, D. C., for ancillary executors and trustees.

MORRIS, District Judge.

Colonel Julius I. Peyser, attorney for a creditor of the estate of Morton H. Goldenberg, deceased, by a motion seeks an allowance of $2,500 from funds resulting from the sale of certain property in these proceedings as compensation for his services, which he asserts have resulted in a benefit to all the creditors. The matter was referred to the Auditor for investigation, report and recommendation. The Auditor took testimony, which he reported to the Court, together with his recommendation that the motion for the allowance of the fee be rejected. The movant filed exceptions to said report and a motion to set aside findings and recommendation of the Auditor, and to make allowance of attorney's fee, upon which a hearing has been had.

The findings of the Auditor show that on November 11, 1944, the ancillary executors and trustees filed their petition, setting forth that they had received an offer of $60,000, all cash, for the property involved in the sale for which the compensation is sought; that the petition prayed the Court to order a hearing on the report, giving notice of said hearing, appoint three disinterested persons to appraise said property, direct requisite publication, ratify and confirm the sale, and authorize the executors and trustee, upon compliance with the contract, to convey said property in accordance therewith. The Court thereupon appointed three appraisers by order dated November 15, 1944, and on November 28, 1944, said appraisers made return, stating that, in their opinion, the property was worth $75,000. On November 30, 1944, an order nisi was entered, authorizing the sale of said property for the said sum of $60,-000 "unless cause be shown to the contrary or a higher offer be made for said real estate acceptable to the Court on or before December 12, 1944, at 10 o'clock a. m., at which time higher offers will be considered and objections to the sale will be heard." The property was finally sold for $81,000, all cash. It is the contention of the movant that it was because of his ob-jections to the sale for the sum of $60,000, his activities in investigating the value of the property, and his interest in securing higher bids therefor that the sum of $81,-000 was finally obtained, and that, as this represents an increase of $21,000 above the sum originally recommended by the executors and trustees, that increase should be charged with an allowance of the fee which he claims.

Unquestionably, Colonel Peyser, in this instance, rendered to his client, one of the creditors who would benefit from the increased sales price, a very valuable service, and it is equally clear that the other creditors were benefited by those services. The alertness and diligence of able counsel afford the surest guaranty that the court and its processes will function in the best interest of litigants and properly perform its high duty. This is precisely what occurred here. It was the duty of the Court to see that the property to be sold realized the highest sum obtainable after appraisal, due notice by publication, and the hearing of objections and higher bids. Thomas et al. v. Peyser et al., 73 App.D.C. 155, 118 F.2d 369; Geiger v. Peyser et al., 74 App. D.C. 372, 123 F.2d 167. While there is no doubt that Colonel Peyser was instrumental in this, it is not a situation such as justifies the charging of a fund, brought into Court for the benefit of parties similarly situated, with compensation upon the theory that there is an implied promise by those who benefit to pay the compensation of the party bringing in such fund or property. No decided case was cited in which the increase in the bidding justified the allowance of compensation such as is here sought, except the case of William Firth Co. v. Millen Cotton Mills et al., C.C., 129 F. 141, which was reversed by the Circuit Court of Appeals for the Fifth Circuit, 129 F. 79, 82. That Court in its opinion took occasion to state:

"We wish to say in the beginning that we do not doubt the distinguished attorneys who have made the claim on the trust fund for fees have done so in good faith and under full conviction of the rightfulness of their claim, that the record shows they have rendered services for which they should be compensated, that the amount

claimed by them and allowed by the circuit court is not unreasonable, and that we would not hesitate to allow the sum to be charged on the trust fund, if, under established equitable principles, it were a proper charge on that fund.

"It may be stated as a general and unquestioned principle that each client should compensate his own solicitor, and that an attorney cannot make another person his debtor by voluntarily rendering services in his behalf without his express or implied assent. The cases which allow compensation to attorneys out of a trust fund are not in conflict with this principle, but are founded upon it, for they depend on the principle of agency; the actual plaintiff being the representative of the beneficiary of the trust. * * * "

■ I cannot conclude that the increased sales price of the property here involved is such a bringing in of property or funds which justifies charging that fund with compensation such as is allowed for bringing property in for the benefit of creditors. I must overrule the motion to set aside the findings and recommendation of the Auditor, whose report in this respect is hereby confirmed, and I must deny the petition for the allowance of the attorney's fee here sought.