B. Nathaniel RICHTER, Joseph S. Lord, III, and Elwood S. Levy

v.

UNITED STATES of America.

Civ. A. No. 27957.

United States District Court
E. D. Pennsylvania.

Dec. 29, 1960.

Marvin Garfinkel, Narin, Garfinkel & Mann, Philadelphia, Pa., for plaintiffs.

Walter E. Alessandroni, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

EGAN, District Judge.

This suit was brought by a well known Philadelphia law firm against the United States to recover a one-third portion of the amount remitted by the Pennsylvania Railroad Company direct to the Government in payment of a lien filed with the railroad by the Railroad Retirement Board under § 12(o) of the Railroad Unemployment Insurance Act of June 25, 1938, c. 680, 52 Stat. 1107, as added by § 323 of the Act of July 31, 1946, c. 709, 60 Stat. 740, 45 U.S.C.A. § 362(o).[1]

Jurisdiction is founded on the Tucker Act, 28 U.S.C. § 1346.[2] The Government

---

1. § 12(o) provides: "Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such infirmity. The Board shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or

claim exists or is asserted, the Board shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement."

2. Jurisdiction is founded upon the Tucker Act as codified in § 1346 of the Judicial Code (28 U.S.C. § 1346) which provides in part that, "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: * * * (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of

moves to dismiss for lack of jurisdiction of the subject matter and for failure of the complaint to state a claim upon which relief can be granted. The motion will be granted.

The instant case is a suit against the United States to recover a proportionate share of a legal fee for services allegedly rendered to the United States in connection with a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

The plaintiffs are B. Nathaniel Richter, Joseph S. Lord, III, and Elwood S. Levy. The complaint alleges that plaintiffs, as attorneys for Peter J. Urban during March of 1960, effectuated by settlement a gross recovery from the Pennsylvania Railroad Company of the sum of $16,800 for injuries sustained in the course of his employment; that the railroad, in satisfaction of the lien of the Railroad Retirement Board, paid to the United States a portion of said recovery amounting to $2,210, said amount representing the benefits previously paid by the United States to the employee on account of disability arising from the said accident; that the railroad paid to the plaintiffs and the employee the sum of $14,590, being the difference between the agreed settlement of $16,800 and the sum of $2,210 paid by the railroad to the United States pursuant to the lien of the Railroad Retirement Board; that plaintiffs were retained as counsel by the employee on a contingent fee basis; [3] that the employee paid a contingent fee to the plaintiffs for their services of $4,639.41 based on the net recovery after litigation expenses and the aforesaid lien of the Railroad Retirement Board had been deducted; that the payment to the United States was made possible by, and as a direct result of, the efforts and legal services of the plaintiffs who seek to be paid by the United States for these services; and that the reasonable and proper value of the services rendered by the plaintiffs for the benefit of the United States is $736.67.

The plaintiffs aver that the payment to the United States was the direct result of their legal efforts and services and seek to be paid on any of several theories. Since there is no statutory authority, their recovery must be based on a quantum meruit basis or on principles of implied contract or of quasi-contract, or on the equitable principle of having created the fund.

It is quite clear from reading the complaint that if the plaintiffs have any claim against the United States, it is on the basis of a contract implied in law as opposed to a contract implied in fact, or on the equitable principle of having created the fund. The United States has not consented to be sued in this action and federal jurisdiction recognizes no such equitable right. Therefore the District Court has no jurisdiction over this action.

Under the Tucker Act, (supra, footnote 1) jurisdiction is conferred upon the District Courts concurrent with that of the Court of Claims of "any other civil action or claim against the United States," not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1346(a)(2).

The Courts have uniformly construed the above provision of the Tucker Act to provide that the implied contract must be one implied in fact as opposed to one implied in law. Goodyear Tire & Rubber Co. v. United States, 1928, 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575; United States v. Minnesota Mutual Investment Co., 1926, 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; Sutton v. United States, 1921, 256 U.S. 575, 581, 41 S.Ct. 563, 65 L.Ed. 1099; Southern Pacific Co. v. United States, 3 Cir., 1951, 192 F.2d 438.

Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

3. A copy of the contingent fee contract is not in the record but it is immaterial to our disposition of the case.

As the Supreme Court stated in the case of United States v. Minnesota Mutual Investment Co., supra, 271 U.S. at page 217, 46 S.Ct. at page 503:

> " * * * An implied contract in order to give the court of claims or a district court under the Tucker Act jurisdiction to give judgment against the government must be one implied in fact and not one based merely on equitable considerations and implied in law."

This distinction between contracts implied in fact as opposed to contracts implied in law is well recognized and has been the subject of much comment by the Courts. The Third Circuit defined the distinction as follows in the case of American La France Fire Engine Co., etc. v. Borough of Shenandoah, 3 Cir., 1940, 115 F.2d 866, at page 867:

> " * * * The distinction between express and implied contracts on the one hand and quasi-contracts on the other is basic. It has been succinctly stated by Mr. Justice Stern in Cameron v. Eynon, 332 Pa. 529, 532, 3 A.2d 423, 424, thus: 'A quasi contract arises where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but even in spite of any intention he might have to the contrary. A quasi contract, which is a fictional contract, is not to be confused with a contract implied in fact, which is an actual contract, and which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances.' "

The distinction was also set forth at some length in the case of G. T. Fogle & Co. v. United States, 4 Cir., 1943, 135 F.2d 117, at page 120:

> " * * * The law, however, makes a distinction, absolutely vital here, between contracts implied in fact and contracts implied by law. This distinction is thus aptly stated in 17

C.J.S., Contracts, § 4, p. 320, 321:
> *'Contract implied in law distinguished.* A distinction exists between contracts implied in fact and those which are implied in law. Thus, a contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances, while a contract implied in law is but a duty imposed by law and treated as a contract for the purposes of a remedy only. Another distinction between such classes of implied contracts lies in the fact that, * * * in the case of contracts implied in fact, there must be an assent of the parties, as in express contracts, whereas, * * * in the case of contracts implied in law, or more properly quasi or constructive contracts, such element of assent is lacking. The distinction has also been stated that a contract implied in fact is an implied contract in which the intention is ascertained and enforced, while a contract implied in law is a mere fiction, the intention being disregarded, and the quasi contractual obligation being imposed by law to bring about justice, without regard to the intention of the parties. Again, in the case of contracts implied in fact, the contract defines the duty, while in the case of constructive contracts, the duty defines the contract.' "

See also Martin v. Campanaro, 2 Cir., 1946, 156 F.2d 127 and Lach v. Fleth, 1949, 361 Pa. 340, 64 A.2d 821.

In the instant case, there are no facts alleged in the complaint from which assent can be inferred. In fact, the complaint alleges no direct relationship whatsoever between the plaintiffs and the United States or the Railroad Retirement Board. It is quite clear that the theory of the complaint is that by the plaintiffs' services, a benefit has been conferred upon the United States, of which, in equity, the United States should bear its proportionate share of the cost of recovery. Thus, it is quite clear that recovery is sought on the basis of equitable

principles rather than a contract implied in fact.

■ This case does not fall within the category of class actions [4] and certainly an attorney cannot seek to have a contract implied in fact as against the Government when he has been representing a private client under a separate bilateral agreement and was acting solely in his behalf. Any benefit which might be received by the Government is purely incidental. In Coleman v. United States, 1894, 152 U.S. 96, 14 S.Ct. 473, 38 L.Ed. 368, the Court refused to imply a contract in fact between an attorney and the United States when he had been previously engaged by another party and the attorney admitted that he had looked to that client for his recompense. The rule generally is that each litigant must pay his own counsel fees and that an attorney cannot make another party—who receives an indirect benefit—his debtor by voluntarily rendering services in his behalf without his express or implied assent. Nolte v. Hudson Navigation Co., 2 Cir., 1931, 47 F.2d 166; Lamar v. Hall & Wimberly, 5 Cir., 1904, 129 F. 79; Weinberg v. Goldenberg's, D.C.D.C.1948, 81 F.Supp. 353.

As the general rule is stated in 7 C.J.S. Attorney and Client § 175, p. 1041:

"An attorney's claim for professional services against persons sui juris, or against the property of such persons, must rest on a contract of employment, express or implied, made with the person sought to be charged or with his agent. No one can legally claim compensation for incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed, or, as has been shown supra § 160, for services voluntarily rendered."

■■ There is sound reason why a contract cannot be implied in fact in the instant case. Under the statutes of the United States, only the Attorney General or the United States Attorney can represent the Government in an action in Court. 5 U.S.C.A. §§ 306–310; Sutherland v. International Insurance Co. of New York, 2 Cir., 1930, 43 F.2d 969. Section 306 of Title 5 U.S.C.A. provides as follows:

"The officers of the Department of Justice, under the direction of the Attorney-General, shall give all opinions and render all services requiring the skill of persons learned in the law necessary to enable the President and heads of Departments, and the heads of Bureaus and other officers in the Departments, to discharge their respective duties; and shall, on behalf of the United States, procure the proper evidence for, and conduct, prosecute, or defend all suits and proceedings in the Supreme Court and in the Court of Claims, in which the United States, or any officer thereof, as such officer, is a party or may be interested; and no fees shall be allowed or paid to any other attorney or counselor at law for any service herein required of the officers of the Department of Justice, except in cases of services performed by attorneys appointed under section 503 of Title 28, for whom compensation is provided under section 508 of Title 28."

Further, Sections 314 and 315 provide:

"§ 314. Counsel fees restricted. No compensation shall be allowed to any person, besides the respective United States attorneys and assistant United States attorneys for services as an attorney or counselor to the United States, or to any branch or department of the Government

---

4. The cases of Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Doherty v. Bress, 1958, 104 U.S.App.D.C. 308, 262 F.2d 20, certiorari denied 1959, 359 U.S. 934, 79 S. Ct. 649, 3 L.Ed.2d 636; Voris v. Gulf-Tide Stevedores, Inc., 5 Cir., 1954, 211 F.2d 549, and Brown v. T. W. Phillips Gas & Oil Co., D.C.W.D.Pa.1952, 105 F.Supp. 479, are not controlling here. They were special situations and are controlled by their own facts.

thereof, except in cases specially authorized by law, and then only on the certificate of the Attorney General that such services were actually rendered, and that the same could not be performed by the Attorney General, or Solicitor General, or the officers of the Department of Justice, or by the district attorneys. * * *"

"§ 315. Appointment and oath of special attorneys or counsel. Every attorney or counselor who is specially retained, under the authority of the Department of Justice, to assist in the trial of any case in which the Government is interested, shall receive a commission from the head of such department, as a special assistant to the Attorney General, or to some one of the district attorneys, as the nature of the appointment may require; and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon them by law. Foreign counsel employed by the Attorney General in special cases shall not be required to take the oath required by this section."

In the case of Eastern Extension, Australasia & China Tel. Co. v. United States, 1920, 251 U.S. 355, at pages 363–366, 40 S.Ct. 168, at page 170, 64 L.Ed. 305, the Supreme Court stated:

" * * * It is obvious that no express contract by the United States to adopt and be bound by the third or any of the concessions can be made out from the findings of fact, and it is equally clear that such an implied contract, using the words in any strict sense, cannot be derived from the findings, for it is plain that there is nothing in them tending to show that any official with power, express or implied, to commit that government to such a contract, ever intended to so commit it.

"The contention of the claimant must be sustained, if at all, as a quasi contract,—as an obligation imposed by law independent of intention on the part of any officials to bind the government,—one which in equity and good conscience the government should discharge because of the conduct of its representatives in dealing with the subject-matter.

* * * * * *

"In the jurisdiction given to the Court of Claims Congress has consented that contracts, express or implied, may be judicially enforced against the government of the United States. But such a liability can be created only by some officer of the government lawfully invested with power to make such contracts or to perform acts from which they may be lawfully implied."

See also United States v. Willis, 4 Cir., 1947, 164 F.2d 453.

Thus, it can be seen that only the Attornel General has the authority to make a contract for the special employment of an attorney. Furthermore no attorney can receive counsel fees from the Government except on receipt of the certificate of the Attorney General that such services were actually rendered. There is no allegation in the complaint of the receipt of such a certificate. Under the circumstances, plaintiffs cannot qualify and no contract can be implied in fact.

It is clear, therefore, that the United States has not consented to be sued and that the complaint must be dismissed.

Notwithstanding this posture of the federal law, the plaintiffs in the instant action contend "that this is a misconstruction of the Act and that, absent a specific provision in the statute denying reasonable compensation to the attorneys who benefited the Board by creating the fund from which the Board is to receive the payments, the courts must look to the laws of the several states to determine whether the attorney who so benefited the Board is entitled to reasonable compensation out of the Board's share of the recovery" and further that the "issue of the case is whether the Act of Congress requires denial of compensation to those who created the fund for the Board or

whether by reason of the failure of Congress to specifically deny the employee's attorneys' compensation the courts should look to applicable state law. The plaintiffs contend that where Congress is silent the courts should not ascribe to Congress an inequitable intent." Plaintiffs' brief, p. 15.

From this circumstance, they argue that the Pennsylvania decisions, notably Furia v. City of Philadelphia, 1955, 180 Pa.Super. 50, 118 A.2d 236 (where plaintiff's attorney was permitted recovery on the theories of subrogation and the creation of a fund from which the City was reimbursed its workmen's compensation outlay), and Meehan v. City of Philadelphia, 1957, 184 Pa.Super. 659, 136 A.2d 178, 181 (where it was stated that in Pennsylvania "subrogation is a matter of pure equity"), apply and that this permits a recovery by plaintiffs under the Rules of Decision Act, § 1652 of the Judicial Code of June 25, 1948, c. 646, 62 Stat. 944, 28 U.S.C. § 1652.

Unfortunately for plaintiffs, they overlook the fact that the equity jurisdiction of the Federal Courts differs from that of the State Courts. The general rule is stated at 19 Am.Jur., Equity § 11 as follows:

"The equity jurisdiction of the Federal courts is derived from the Constitution and laws of the United States; and throughout the different states of the Union the jurisdiction of these courts in equity is uniform and unaffected by state legislation."

See Mississippi Mills v. Cohn, 1893, 150 U.S. 202, 14 S.Ct. 75, 37 L.Ed. 1052.

As a consequence the many authorities cited by plaintiffs in their well-prepared briefs have no application to the facts at hand.

■ Plaintiffs argue, contrary to the defendant, that Lewis v. Railroad Retirement Board, 1951, 256 Ala. 430, 54 So.2d 777, certiorari denied 1952, 343 U.S. 919, 72 S.Ct. 677, 96 L.Ed. 1333, supports plaintiffs' theory of the instant case. They say that the State Court decided Lewis on the basis of whether the lien of the Board or the lien of the employee's attorney was superior, and applying Alabama law determined that the Board's lien, being first in time, was superior to that of the attorney. From this they argue that this Court, by applying Pennsylvania law, will reach a conclusion directly opposite to that reached by the Alabama court under the unique lien law of that State. We believe that the Alabama court reached the right conclusion, but for the wrong reason. No State law and no State decision can divest or downgrade a federal lien in the absence of the consent of Congress. This is clear from the authorities above cited.

■ Plaintiffs also argue that the cases cited by the defendant, decided under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, have no value in helping the Court in solving the problems presented by the instant case. We disagree. We think those cases are most helpful because they make it clear that when Congress wants an attorney's fee paid out of money returned to the Government by way of a lien, it knows how to use language to accomplish the purpose. The cases referred to are Davis v. United States Lines Co., 3 Cir., 1958, 253 F.2d 262; Oleszczuk v. Calmar Steamship Corp., D.C.D.Md.1958, 163 F.Supp. 370; Davis v. United States Lines Co., D.C.1957, 153 F.Supp. 912 decided by my able colleague, Judge Van Dusen; Fontana v. Pennsylvania R. R., D.C.S.D.N.Y.1952, 106 F.Supp. 461, affirmed sub nom. Fontana v. Grace Line, Inc., 2 Cir., 205 F.2d 151, certiorari denied Fontana v. Huron Stevedoring Co., 1953, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390. See also Voris v. Gulf-Tide Stevedores, Inc., 5 Cir., 211 F.2d 549, certiorari denied 1954, 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649.

For the foregoing reasons, we believe that defendant's motion to dismiss must be granted as this Court has no jurisdiction and plaintiffs have not stated a cause of action.

It is so ordered.