## UNITED STATES et al. v. WILLIS.

### No. 5651.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1947.

454

Jess H. Rosenberg, of Washington, D. C., Atty., Dept. of Justice (Peyton Ford, Asst. Atty. Gen., Harry H. Holt, Jr., U. S. Atty., of Norfolk, Va., J. Frank Staley, Sp. Asst. to the Atty. Gen., and Llewellyn S. Richardson, Asst. U. S. Atty., of Norfolk, Va., on the brief), for appellants.

Leon T. Seawell, of Norfolk, Va., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the United States from a judgment in a suit instituted under the Tucker Act, 28 U.S.C.A. § 41(20). The complaint was filed by one C. G. Willis, owner of the tug Ionian and the barge Manhattan, which had been requisitioned for use by the War Shipping Administration. He alleged that he had been engaged under contract to man, equip, supply and operate these vessels at the rate of $7,158 per month, and that for the period between January 15, 1943 and February 12, 1943, he had not been paid and was entitled to recover the sum of $6,442.20. The District Judge found that, for the period mentioned, plaintiff had incurred expense in the sum of $3,820.95 in keeping a crew on the vessels pursuant to the suggestion of an official of the War Shipping Administration, and gave judgment for that amount.

The facts are that on August 1, 1942, the War Shipping Administration requisitioned the tug and barge for use under bareboat charters and simultaneously delivered them to the United States Army Engineers, a branch of the War Department, for use in connection with a project being carried on by Pleasantville Constructors, Inc. That corporation, on August 15, 1942, entered into a contract with plaintiff under which he was to fuel, man and operate the vessels for a compensation of $7,158 per month. This contract was terminated on January 15, 1943, when the vessels were at Miami, Florida, and still subject to the bareboat charters held by the War Shipping Administration. Title was requisitioned by the government on February 12, 1943. The judgment awarded plaintiff was for expenditures made by him in keeping crews on the vessels between the time that the contract with Pleasantville Contractors was terminated on January 15th and the requisitioning of title on February 12th.

It is perfectly clear that upon the termination of the Pleasantville contract on February 15th plaintiff had no further rights under that instrument to reimbursement for expense incurred in maintaining a crew on the vessels. The judge below seems to have been of the mistaken opinion, however, that that contract had not been formally terminated and that plaintiff was entitled to recover the expense for that reason and because of a suggestion made with regard to the matter by one Loveland, who was employed as assistant to the Director of the Division of Small Vessels in the War Shipping Administration. There can

be no question but that the Pleasantville contract had been formally terminated; and, while there is some conflict in the evidence as to what took place between plaintiff and Loveland,[1] the evidence is uncontradicted that the latter was absolutely without authority to bind the United States for the expense of maintaining a crew on the vessels and there is no evidence of any sort that he had authority to contract, or to bind the United States in any way, with respect to the care, maintenance or manning of the vessels. The uncontradicted evidence is that the only duty which even the War Shipping Administration had with respect to vessels of this character was to requisition them for the governmental agency by which they were to be used.

Under such circumstances, we think it perfectly clear that the United States cannot be held to liability on the theory that there was a contract between plaintiff and an officer of the government. He who deals with an agent of the government must look to his authority, which will not be presumed but must be established. He cannot rely upon the scope of dealing or apparent authority as in the case of a private agent. Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403; United States v. North American Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935; Whiteside v. United States, 93 U.S. 247, 256-257, 23 L.Ed. 882; The Floyd Acceptances, 7 Wall. 666, 676, 677, 19 L.Ed. 169.

And we think it equally clear that plaintiff cannot recover on the theory of implied contract. Since there is no evidence of authority on the part of Loveland to commit the government, there is no basis in the evidence for the finding of a contract implied in fact; and it is well settled that, under the Tucker Act, there is no jurisdiction to render judgment on a contract implied merely in law. Baltimore Mail S. S. Co. v. United States, 4 Cir., 76 F.2d 582, 584, certiorari denied 296 U.S. 595, 56 S.Ct. 111, 80 L.Ed. 421; G. T. Fogle & Co. v. United States, 4 Cir., 135 F.2d 117, 120, certiorari denied 320 U.S. 771, 64 S.Ct. 83, 88 L.Ed. 461; Eastern Extension Tel. Co. v. United States, 251 U.S. 355, 40 S.Ct. 168, 170, 64 L.Ed. 305. As said by the Supreme Court in the case last cited, which affirmed a judgment dismissing petition against the United States in the Court of Claims:

"It is obvious that no express contract by the United States to adopt and be bound by the third or any of the concessions can be made out from the findings of fact, and it is equally clear that such an implied contract, using the words in any strict sense, cannot be derived from the findings, for it is plain that there is nothing in them tending to show that any official with power, express or implied, to commit that government to such a contract ever intended to so commit it.

"The contention of the claimant must be sustained, if at all, as a quasi contract, as an obligation imposed by law independent of intention on the part of any officials to bind the government, one which in equity and good conscience the government should discharge because of the conduct of its representatives in dealing with the subject matter. * * * In the jurisdiction given to the Court of Claims Congress has consented that contracts, express or implied, may be judicially enforced against the government of the United States. But such a liability can be created only by some

---

[1] Willis testified that Loveland said: "You stay there and keep your crew by and I will immediately contact the Army and as quickly as it can be handled, I will let you know what to do". p. 17 supplement. Loveland testified that in effect he said: "Well, I can't tell you". p. 33 supplement. "My personal advice to you is, before you lay off everybody, you certainly ought to consider the safety of the equipment, and you will have to use your own judgment, but certainly somebody has to pay you if they tell you to keep them on there". p. 34 supplement.

"I can't tell you to do it; neither can I tell you to keep them, but I certainly would advise you to be very careful before you lay those boats up without anybody taking care of them". p. 35 supplement. "I certainly never told him to keep his full crew or not to keep them". p. 35. "Well I think I advised him * * * that I would get some authority from the War Department to keep enough of the crew on that equipment to look out for it, but I could not give it to him." p. 37.

officer of the government lawfully invested with power to make such contracts or to perform acts from which they may be lawfully implied."

No authority is cited by the District Court or by counsel for appellee in support of the decision below and we know of none; nor do we know of any principle of law upon which it can be sustained. Plaintiff in his brief calls attention to article 10 of the bareboat charter which requires the charterer to man, victual and navigate the vessels and pay all expenses incident thereto; but there is manifestly nothing in this which obligates the charterer to reimburse plaintiff for maintaining a crew on the vessels. The brief refers also to subsection (b) of article 4 of the charter, but this has reference to the amount which the charterer at its option may pay the owner in lieu of making repairs and has no possible bearing upon the matter here in controversy.

The judgment appealed from will be reversed and the case will·be remanded with direction to enter judgment for the defendants.

Reversed.