## COLUMBIA HOSPITAL OF RICHLAND COUNTY v. UNITED STATES.

### C. A. No. 2227.

United States District Court
E. D. South Carolina, Columbia Division.

Dec. 22, 1949.

Hunter A. Gibbes, Columbia, S. C., for plaintiff.

Ben Scott Whaley, U. S. Attorney, Charleston, S. C., Russell D. Miller, Assistant U. S. Attorney, Florence, S. C., for defendant.

WYCHE, District Judge.

Plaintiff operates a hospital in the City of Columbia, Richland County, South Carolina, and brings this action against the United States to recover $8,762.38 for hospital services rendered Halsford V. Sharpe.

The complaint, in substance, alleges that on March 7, 1942, two agents of the Alcoholic Tax Unit of the Treasury Department, accompanied by J. A. Watts, Deputy Sheriff of Lexington County, South Carolina, raided a distillery near Gaston, South Carolina; while running away from the distillery in an attempt to escape arrest Halsford V. Sharpe was shot in the back, seriously wounded, permanently disabled, and has not been able to walk or earn a living since that time; immediately after the shooting the two agents of the Treasury Department took the said Sharpe to the hospital of the plaintiff for medical and surgical treatment as a patient of the Treasury Department, and in behalf of the Treasury Department agreed that the Department would pay the plaintiff for all services required in the treatment of the patient, including board, room, medical and surgical care; that, relying upon said agreement, the plaintiff accepted the patient and rendered the required services for his treatment commencing March 7, 1942,

to and including December 31, 1945, and charged for said services the sum of $4,470.05; that on October 7, 1942, the Justice Department of the defendant paid to the plaintiff the sum of $654.30 on said account, and on November 21, 1942, paid on said account the sum of $400.85, this being the balance owing up to September 16, 1942; that on May 22, 1942, a true bill was found in the United States District Court against Sharpe on the charge that he had been operating a distillery for the manufacture of whiskey without giving a bond, as required by law; that on June 15, 1942, the Court issued an order for the arrest of Sharpe and fixed a bond in the sum of $1,000.00; that the indictment was dismissed by order of the Court dated September 16, 1942, and Sharpe was released from constructive custody on September 17, 1942; a copy of the Order of discharge was served on plaintiff and the following endorsement was entered thereon: "September 17, 1942, I hereby certify and return that I have this day executed the within order by notifying the Columbia Hospital, Columbia, S. C. that the United States would no longer be responsible for any bills incurred by defendant Halsford Victor Sharpe. William F. Burguson U. S. Marshal Eastern District of S. C. By E. Mullins McLeod Deputy. Filed September 23, 1942"; that the said Sharpe never at any time agreed to incur any bills at plaintiff's hospital; that he was taken by force to the hospital against his will by the two agents of the Treasury Department, and likewise the United States Marshal has never incurred liability, and in the above stated manner the Marshal without just cause and arbitrarily attempted to repudiate the contract for services to Sharpe made by the Treasury Department, as above set forth; that at the time of said repudiation or attempted repudiation of the agreement to pay, Sharpe was still under treatment in the hospital on account of the injuries incurred when he was shot in the back and was not in condition to be discharged or moved from the hospital; that the United States Marshal made no offer or attempt to have the Treasury Department's patient moved to some other hospital or institution operated by the Federal Government; that plaintiff faithfully continued the care and treatment of Sharpe to December 31, 1945, and that the treatment has been continued to date; that the charge for services to the patient since December 31, 1945, and to January 1, 1949, amounts to $5,347.48; that subsequent to December 31, 1945, a claim was presented with supporting affidavits to the Treasury Department and the Justice Department, and both denied payment; that during the early part of 1948, through the cooperation of the Department of Justice and the Senators and Congressmen from South Carolina, H.R. Bill No. 431 was passed by Congress, authorizing the payment of the bill for services to and including December 31, 1945, in the sum of $3,419.90; that, thereafter in 1948, the said Act was vetoed by the President and his veto was sustained by the Congress; that the plaintiff accepted the patient of the Treasury Department in good faith and in the regular course of business, and the defendant is liable for the accounts herein claimed.

The case is now before me upon motion of the defendant to dismiss the action upon the ground that the complaint fails to state a claim against defendant upon which relief can be granted.

Before new Title 18 was adopted the federal statutes provided: "Expenses for transportation and confinement of prisoners paid by United States. All the expenses attendant upon the transportation from place to place, and upon the temporary or permanent confinement of persons arrested or committed under the laws of the United States, as well as upon the execution of any sentence of a court thereof respecting them, shall be paid out of the Treasury of the United States in the manner provided by law." 18 U.S.C.A. § 701.

"Actual reasonable cost of subsistence paid. There shall be allowed and paid by the Attorney General, for the subsistence of prisoners in the custody of any marshal of the United States and the superintendent of the Washington Asylum and Jail, such sum only as it reasonably and actually

cost to subsist them. And it shall be the duty of the Attorney General to prescribe such regulations for the government of the marshals and the superintendent of the Washington Asylum and Jail, in relation to their duties, as will enable him to determine the actual and reasonable expenses incurred." 18 U.S.C.A. § 703.

These two statutes were changed in the new Title 18 to read as follows: "Expenses of prisoners. The expenses attendant upon the confinement of persons arrested or committed under the laws of the United States, as well as upon the execution of any sentence of a court thereof respecting them, shall be paid out of the Treasury of the United States in the manner provided by law." 18 U.S.C.A. § 4007.

"Subsistence for prisoners. The Attorney General shall allow and pay only the reasonable and actual cost of the subsistence of prisoners in the custody of any marshal of the United States, and shall prescribe such regulations for the government of the marshals as will enable him to determine the actual and reasonable expenses incurred." 18 U.S.C.A. § 4006.

In 27 Comptroller Decisions, 531 (1920), the Comptroller of the Treasury decided: "The expense of necessary medical or surgical treatment of persons who have been arrested by officers of the United States and are held as prisoners of the United States is an expense incident to the arrest which, if incurred under proper conditions and with due authority, is a lawful charge against the United States. * * * Generally speaking, payment of reasonable expense of necessary medical or surgical treatment of a prisoner who has been arrested and is in the custody of officers or agents of the United States should follow the rule thus announced."

In 2 Comptroller General, 804, certain expenses were not allowed for the reason that the claim grew out of medical care obtained after the arrested person had been released on bond. The Comptroller General in denying the claim said: "Having been released on bond, the said Mack (who had been shot through the elbow at the time of his arrest on a charge of smug-gling) may be said to have assumed responsibility for the expense of medical or surgical treatment thereafter. His injuries were the result of his own misconduct and not in any way the result of an act for which the United States is liable. The customs officers were without authority to obligate the United States to pay for the expense of treatment rendered by the claimant during a period when the wounded man was not in the custody of an officer of the United States and held as a prisoner of the United States."

In 17 Comptroller General, 860, denying any government liability for a state officer accidentally shot by a federal officer during a raid on an illegal distillery, the Comptroller General said: "The obligation of the United States to bear the cost of medical, hospital, and burial (5 Comp.Gen. 929) expenses of a prisoner does not arise alone by reason of the act of arrest but only when the arrested prisoner is properly in the custody of the United States as a result of a lawful arrest. In other words, the custody in the United States of a prisoner, and not his arrest, is the determining factor."

A liability against the Government of the United States on contract, expressed or implied, can be created only by some officer of the Government lawfully invested with the power to make such contract, or to perform acts from which it may be lawfully implied. Eastern Extension Australasia & China Tel. Co. v. U. S., 251 U.S. 355, 40 S.Ct. 168, 64 L.Ed. 305.

The defendant in this case accepted liability for the prisoner during the time it had him in custody and paid all expenses during such time. Neither the federal officers here involved, nor anyone else, had authority to enter into a contract or bind the Government to any greater degree.

I have been unable to find any authority, either State or Federal, holding the United States liable for the continuing care of a prisoner once out of custody.

It is, therefore, my opinion that the motion to dismiss should be granted, and

It is so ordered.