**GOULD, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–88C.**

United States Court of Federal Claims.

Oct. 29, 1993.

---

**15.** *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 210 (Colo.1984).

Arnold M. Auerhan, Dept. of Justice, Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Mary Mitchelson, Deputy Director, Washington, DC, for U.S.

Michael T. Janik, McKenna & Cuneo, Washington, DC, for plaintiff.

Andrei Kushnir (of counsel), Dept. of the Navy, Washington, DC, for the government.

## *Opinion*

WEINSTEIN, Judge.

The complaint herein was dismissed for failure to state a claim. The dismissal was reversed and remanded. Defendant now moves to dismiss the complaint for lack of jurisdiction. After briefing by the parties, the motion is granted.

■ When deciding a motion to dismiss, the court "must assume each well-pled factual allegation to be true and in-

1. Both parties have relied on facts in both the amended complaint and in documents that were attached to the original complaint. This is improper. An amended complaint entirely supersedes and replaces the original complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir.1990); *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 740 (5th Cir.1986). Unless the original complaint was incorporated into the amended complaint (which is not the case here), the former cannot be used to aid the latter. *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir.1956); *see, e.g., Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985).

dulge in all reasonable inferences in favor of the nonmovant." *Owen v. United States*, 851 F.2d 1404, 1407 (Fed.Cir.1988); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### *Facts* [1]

In 1983, the Navy issued a request for proposals (RFP) for a multi-year, fixed-price contract to produce Bancroft-type radios pursuant to Navy specifications.

The RFP included drawings and specifications for a Bancroft radio used by the Army, labeled "for informational purposes only." Because of differences between the Army specifications and the Navy specifications, the Army plans were not helpful or illuminating in the design of the Navy radio.

At a question and answer session, interested contractors requested information, such as a test report evaluating the Army radio under the new Navy specification, that plaintiff alleges would have shown that the Army drawings inaccurately represented how much design and development would be necessary to develop and manufacture the Navy radios. The Navy refused to release this information prior to awarding the contract. Instead, the Navy contended that the Navy performance specifications would provide adequate guidance to a contractor. The Navy rejected contractor concerns that the eighteen month design period was inadequate.

The contract was awarded to plaintiff Gould, Inc. The design and development work needed to meet the Navy specifications was far in excess of what Gould had anticipated. As a result, Gould suffered substantial losses on the contract.

In December 1986, Gould submitted a claim to the contracting officer. Pursuant to a December 9, 1987 agreement with

*See generally* 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 15.08[7] (1993).

That the documents attached to the original complaint were mentioned in the amended complaint is not sufficient to adopt them by reference. They must be attached in order to be incorporated. RUSCFC 10(c); *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1198 (8th Cir.1984).

The facts in this opinion are solely those alleged in the amended complaint. (The additional facts would not have changed the outcome herein.)

Gould, the Navy terminated the contract for default. The contracting officer's decision denying the claim was issued on January 8, 1988.

### Prior History

Gould's original complaint was filed February 12, 1988. The amended complaint, filed July 20, 1988, contains three counts, each of which seeks equitable reformation of the contract. The prayer for relief seeks monetary damages as well.

The first count seeks relief on the grounds that 10 U.S.C. § 2306(h)(1)(D) (1982) required a "stable design" for items to be procured by multi-year contract, and therefore the contract was illegal because the Army plans did not satisfy this requirement. The second count incorporates by reference every allegation preceding it, and seeks relief on the grounds that the Navy withheld information available to it which would have shown Gould how much work the contract would require. The third count, which also incorporates by reference every allegation preceding it, and seeks relief on the grounds that Gould and the Navy made a mutual material mistake as to how much effort would be required to bring the Army radio up to the Navy's performance standards.

The Claims Court[2] dismissed the complaint for failure to state a claim upon which relief could be granted. *Gould, Inc. v. United States*, 19 Cl.Ct. 257, 269 (1990) [hereinafter *Gould I*]. The court found that reformation was not available under the first count, because "an illegality during procurement precludes a contract from arising. As a general rule, without a contract, a court would have nothing to reform." *Id.* at 264 (citation omitted). The court noted two exceptions to this rule, but held that neither applied. First, the court noted that "a court may grant equitable relief under an illegal contract if the Government received a benefit from the con-

tractor's performance," *id.* (citing *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed.Cir.1986)), but held that "[t]he Navy did not receive a benefit under the contract," *Gould I*, 19 Cl.Ct. at 265. Second, the court stated that "a court may grant equitable relief under an illegal contract, even though the Government received no benefit, if the illegality was not plain or clear," *id.* at 264 (citing *John Reiner & Co. v. United States*, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964)), but held that the lack of a stable design was clear, *Gould I*, 19 Cl.Ct. at 265. The court also dismissed the second and third counts, for reasons not relevant to the present motion. *Id.* at 267–69.

This decision was reversed on appeal. *Gould, Inc. v. United States*, 935 F.2d 1271, 1276 (Fed.Cir.1991) [hereinafter *Gould II*]. The Federal Circuit agreed that "[a] court may grant equitable relief under an illegal contract if the government received a benefit from the contractor's performance," *id.* at 1275 (citing *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed.Cir.1986)), but reversed the finding that the Navy received no benefit from Gould, because "the Claims Court did not consider whether the extensive design work alleged in Gould's complaint ... was sufficient to confer a benefit on the government," *Gould II*, 935 F.2d at 1275. In addition, the court reversed the finding that the contract was clearly illegal. *Id.* ("Gould was unaware of the extensive design effort that would be required by the Navy's performance specifications. Moreover, the government has at all times argued that there *was* a stable design, which belies the court's finding that Gould knew or should have known that there *was not* a stable design.").[3] The court also reversed some of the Claims Court's findings relating to the other counts. *Id.* at 1275–76.

---

2. The name of this court was changed from the United States Claims Court to the United States Court of Federal Claims by § 902 of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, 4516 (1992), which was signed into law on October 29, 1992).

3. The government first made the argument that there was no stable design after the claim was filed in this court.

Defendant now moves to dismiss the complaint on the grounds that it seeks recovery under an implied-in-law contract, over which this court lacks jurisdiction. This second motion is permissible, whether it is a motion to dismiss for lack of jurisdiction, Rules of the United States Court of Federal Claims (RCFC) 12(h)(3), a motion for judgment on the pleadings, RCFC 12(h)(2), or a motion to dismiss for failure to state a claim (in which case it would be treated as a motion for judgment on the pleadings, *see, e.g., Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990); *Wagner v. Higgins,* 754 F.2d 186, 188 (6th Cir.1985)). *See generally* 2A James W. Moore et al., *Moore's Federal Practice* ¶ 12.23 (1993).

## Discussion

The procurement statute clearly permits the armed forces to procure items by multi-year contract only when "there is a stable design for the property to be acquired." 10 U.S.C. § 2306(h)(1)(D) (1982). Gould's complaint asserts that the contract was illegal because there was no stable design for the Navy radio.

For a contract with the United States to arise, the contracting officer must have actual authority to bind the government; conversely, if the officer exceeds his contracting authority, no contract arises. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). This is the case whether the putative contract is express or implied in fact. *Eastern Extension, Australasia &*

*China Tel. Co. v. United States,* 251 U.S. 355, 363–66, 40 S.Ct. 168, 170–72, 64 L.Ed. 305 (1920); *City of Alexandria v. United States,* 737 F.2d 1022, 1027 (Fed.Cir.1984).

Because Gould's complaint is based solely on a contract with the United States and yet it alleges both that there was no stable design and that the contract (whether express or implied in fact) was illegal, the only possible basis for contract jurisdiction is a contract implied in law. The Tucker Act's grant of jurisdiction is limited, however, to cases based "upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1) (1988). Implied-in-law contracts, if contracts at all,[4] are not contracts within this court's jurisdiction. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *City of El Centro v. United States,* 922 F.2d 816, 823 (Fed.Cir.1990).[5]

The principle that the government cannot be bound by the unauthorized actions of its officers was reaffirmed in *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In that case, a personnel officer incorrectly advised a retired government worker that earning income over a certain amount would not affect the worker's disability annuity. In fact, under the relevant statute, the extra earnings made him ineligible for the benefits. *Id.* at 416–19, 110 S.Ct. at 2467–69. The Court held that the worker could not recover his lost benefits.

The Appropriations Clause of the Constitution, Art. I, § 9, cl. 7, provides that "No Money shall be drawn from the

---

4. "As a general rule, there can be no implied contract where there is an express contract between parties covering the same subject." *Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 673, 428 F.2d 1241, 1255 (1970).

5. Gould now contends that counts two and three of the complaint are alternative to count one, and do not allege that the contract was illegal. This is both incorrect and irrelevant. Counts two and three expressly incorporate by reference every previous allegation in the complaint, including the allegations in count one. Plaintiff's Amended Complaint at ¶¶ 13, 23. A complaint will not be construed as being pled in the alternative if it does not appear that plaintiff has exercised its right to do so. *See, e.g., Gor-*

*don v. Matthew Bender & Co.,* 562 F.Supp. 1286, 1298–99 (N.D.Ill.1983).

Moreover, the causes of action asserted in those counts—for superior knowledge and mutual mistake—are, as plaintiff concedes, contractual arguments, *see Atlas Corp. v. United States,* 895 F.2d 745, 750 (Fed.Cir.) (mutual mistake), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990); *Petrochem Servs., Inc. v. United States,* 837 F.2d 1076, 1078–79 (Fed.Cir. 1988), which rely on the existence of a valid contract whether express or implied in fact. Plaintiff relies on no contract other than the implied-in-law "contract" alleged in count one. See *infra,* n. 5.

Treasury, but in Consequence of Appropriations made by Law." For the particular type of claim at issue here, a claim for money from the Federal Treasury, the Clause provides an explicit rule of decision. Money may be paid out only through an appropriation made by law; in other words, the payment of money must be authorized by a statute. *All parties here agree that the award respondent seeks would be in direct contravention of the federal statute upon which his ultimate claim to the funds must rest ....* It follows that Congress has appropriated no money for the payment of the benefits respondents seeks, and the Constitution prohibits that any money "be drawn from the Treasury" to pay them.

*Id.* at 424, 110 S.Ct. at 2471 (emphasis added).

■ To enter judgment in Gould's favor would be to award relief on its "claim for money from the Federal Treasury," notwithstanding that the award "would be in direct contravention of the federal statute upon which [its] ultimate claim to the funds must rest." Thus, this court is barred from allowing the claim.

Congress' "general appropriation of funds to pay judgments against the United States rendered under its various authorizations for suits against the Government, such as the Tucker Act," *id.* at 431, 110 S.Ct. at 2475, does not impart contrary authority.

> [T]he general appropriation for payment of judgments ... does not create an all-purpose fund for judicial disbursement. A law that identifies the source of funds is not to be confused with the conditions prescribed for their payment. Rather, funds may be paid out only on the basis of a judgment based on a substantive

right to compensation based on the express terms of a specific statute.

*Id.* at 432, 110 S.Ct. at 2475.

Gould relies on *United States v. Amdahl Corp.*, 786 F.2d 387, 393–94 (Fed.Cir.1986), for the proposition that a contractor may recover on an illegal contract if the government received a benefit from the contractor's performance, or if the illegality of the contract was not clear. This court concludes, however, that awarding relief based on a contract that violated a federal statute is barred by the Supreme Court's decision in *Richmond.*[6] *See Shearin v. United States*, 25 Cl.Ct. 294, 298 (questioning whether *Amdahl* survived *Richmond*), *aff'd*, 983 F.2d 1085 (Fed.Cir.1992) (unpublished opinion); *see also JANA, Inc. v. United States*, 936 F.2d 1265, 1270 (Fed. Cir.1991). *Contra Janowsky v. United States*, 23 Cl.Ct. 706, 716 (1991) ("Even after *Office of Personnel Management v. Richmond*, ..., the line of cases culminating in *Amdahl* is still good law."), *vacated on other grounds*, 989 F.2d 1203 (Fed.Cir. 1993) (unpublished opinion), see *Godley v. U.S.*, 5 F.3d 1473, 1476 (Fed.Cir.1993) (citing *Amdahl*, in *dictum*, for the proposition that equitable relief may be awarded even if the contract upon which the claim is based is illegal, if the illegality was not plain).[7]

■ Gould contends, however, that the Federal Circuit's holding in *Gould II* that Gould may be entitled to recover even though the contract violated the statute is binding on this court as the law of the case. The law of the case doctrine requires a lower court, following a remand, to follow the decision of the reviewing court. *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1550 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102

---

6. Although *Richmond* arose in an entitlement case, it nonetheless may have precedential value in a contract action in this court. *See City of Alexandria v. United States*, 737 F.2d 1022, 1028 (Fed.Cir.1984). ("[*Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981),] involves an entitlement, but we did not then, nor do we now, regard that fact as stripping it of precedential valve in contract case.").

7. The narrow holding in *Amdahl* was based on a statutory provision in the Federal Property and Administrative Services Act of 1949, as amended, codified at 40 U.S.C.A. § 759(h)(6)(B), which permits innocent bidders to recover the value of delivered goods and services when the contact is voided due to a revocation by the GSBCA of the agency's procurement authority.

L.Ed.2d 57 (1988), *and overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020 (Fed. Cir.1992). The law of the case rule does not apply in this case, for two reasons.

First, an appellate decision is no longer the law of the case where " 'controlling authority has since made a contrary decision of the law applicable to such issues.' " *Gindes v. United States,* 740 F.2d 947, 950 (Fed.Cir.) (quoting *United States v. Turtle Mountain Band of Chippewa Indians,* 612 F.2d 517, 521, 222 Ct.Cl. 1 (1979)), *cert. denied,* 469 U.S. 1074, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984); *accord Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1580 (Fed.Cir.1983).[8]

Two Federal Circuit decisions this year have addressed *Richmond*'s effect on government contracts cases.[9]

*Burnside–Ott Aviation Training Center, Inc. v. United States,* 985 F.2d 1574 (Fed.Cir.1993), involved a contractor who sought an equitable adjustment based on its contract with the Navy. The court held that *Richmond* does not apply to such a claim, but made it clear that *Richmond* does apply when, as here, the claim is based and barred by a statute.

> *Richmond* is limited to "claim[s] for the payment of money from the Public Treasury *contrary to a statutory appropriation.*" 496 U.S. at 424, 110 S.Ct. at 2471 (emphasis added). Indeed, because the Supreme Court's analysis in *Richmond* is based entirely on the Appropriations Clause of the Constitution, Article 1, Section 9, Clause 7, which provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," its *holding must be limited to claims of entitlement contrary to statutory appropriations.*

*Id.* at 1581 (emphasis added). This statement makes it clear that *Richmond* bars the payment of a claim, like Gould's, that is not in accord with the relevant statute. The *Burnside–Ott* court did not hold or imply that a claim contrary to statutory appropriations limitations or beyond the contracting officer's authority may be entertained merely because the claim was cloaked in a contractual theory of recovery (as, in fact, was the claim in *Richmond*). *See also CACI, Inc. v. Stone,* 990 F.2d 1233, 1236 (Fed.Cir.1993) (relying in part on *Richmond* to hold that a contractor could not recover on a contract into which the contracting officer was not authorized to enter).

 These decisions suggest that, had the issue been presented to the *Gould II* panel, the court would have reached the conclusion that this court reaches today. The question did not arise in *Gould II*, however, either in the opinion or in either party's briefs.[10] This is the second reason that the law of the case doctrine does not apply in this case: a lower court is not bound on matters not addressed by the appellate court. *Exxon Corp. v. United States,* 931 F.2d 874, 877–78 (Fed.Cir.1991).

### Conclusion

For the reasons stated above, defendant's motion to dismiss the complaint is granted. The clerk is ordered to dismiss the complaint.

---

**8.** *Richmond* was decided after the decision in *Gould I.*

**9.** Defendant's motion for leave to file supplemental authority, which notified the court of these decisions, is granted.

**10.** In determining a jurisdictional issue, a court is not bound by the fact that a court with binding authority exercises subject matter jurisdiction under identical circumstances if the jurisdictional issue was not raised to or decided by the court. *See Christianson v. Colt Indus. Operating Corp.,* 822 F.2d 1544, 1551 & n. 7 (Fed.Cir. 1987), *rev'd on other grounds,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).