Williams, Judge,
delivered the opinion of the court:
The plaintiff in this case seeks to recover the sum of $5,836.64, the amount of a judgment entered in his behalf against the Black Star Line, Inc., on January 28, 1925, in the Supreme Court of the State of New York, the same being for wages due the plaintiff for services rendered as a marine engineer in charge of the Kanawha, a vessel owned and operated by the said Black Star Line, Inc.
The plaintiff bases his right to recover on the provisions of an act of Congress of May 1, 1929 [45 Stat. 2345], referred to in Finding VIII, which reads as follows:
[Pbivate — No. 459- — 70th Congress]
[S. 2291]
An Act For the relief of certain seamen and any and all persons entitled to receive a part or all of money now held by the Government of the United States on a purchase contract of steamship Orion who are judgment creditors of the Black Star Line (Incorporated) for wages earned.
Be it enaeted by the Senate and House of Representatives of the Umted States of America in Congress assembled, That jurisdiction be, and hereby is, conferred upon the Court of Claims, notwithstanding any lapse of time or statute of limitation, and without the permission on the part of the Government or its representatives, to interpose any kind of defense to said claim, except to have the person, persons, corporation, or corporations to whom such money or a part of such money shall belong, as a matter of equity and justice to hear, adjudicate, and render judgment, such as equity and justice may require, in favor of such person, persons, corporation, or corporations, as upon a determination of the facts heard by said court, the said court shall determine, is entitled to receive such money in the sum of $21,624.66 less any cost legally incurred in the Court of Claims, which said sum of money has been paid into the Treasury of the United States by the United States Shipping Board, on account of a purchase by the Black Star Line (Incorporated) or other persons in their behalf, of a certain ship known as *308 the steamship Orion. It is hereby recognized by this Act that the said sum of money above set forth, in equity and good conscience, does not belong to the United States Government, and the Court of Claims is vested with full jurisdiction, under its rules and proceedings, to render judgment for such money or parts thereof as in equity and good conscience any person or persons, corporation, or corporations, may be entitled to receive.
Approved March 1, 1929.
The Black Star Line, Inc., a Delaware corporation, with its office and place of business in New York City, was engaged in the business of owning and operating ocean-going steam vessels.
On August 2, 1921, the Black Star Line, Inc., through its agents, deposited with the United States Shipping Board the sum of 12,500, and on December 22, 1921, deposited an additional sum of $10,000, making a total sum of $22,500, so deposited towards the purchase from the Shipping Board of the S. S. Orion, a Government-owned vessel.
On account of financial difficulties, the Black Star Line, Inc., was not able to comply with the terms of the proposed purchase and sale of the said vessel and the sale was not consummated. The Shipping Board thereafter deposited the $22,500 so received, less $815.34 costs incurred in conditioning the said vessel in anticipation of its sale to the Black Star Line, Inc., in the Treasury of the United States.
The Black Star Line, Inc., has been dissolved for nonpayment of taxes and no longer exists as a corporation.
In addition to the judgment obtained against the Black Star Line, Inc., by the plaintiff, certain other seamen employed on the ship Kanawha, were awarded judgments for wages earned, by the United States District Court of Southern New York in amount aggregating $12,303.35, making the total amount of the judgments entered in favor of these employees of the Black Star Line, Inc., the sum of $18,139.99.
The $21,624.66 received by the Shipping Board from the Black Star Line, Inc., is now in the Treasury, where it has been for nearly nine years.
The jurisdictional act states:
“ It is hereby recognized by this act that the said sum of money above set forth, in equity and good conscience, does *309 not belong to tbe United States Government, and the Court of Claims is vested with full jurisdiction, under its rules and proceedings, to render judgment for such money or parts thereof as in equity and good conscience any person or persons, corporation or corporations, may be entitled to receive.”
To whom do these funds in equity and good conscience belong? The title of the act leaves no doubt as to the judgment of Congress on that point:
“An act for the relief of certain seamen and any and all persons entitled to receive a part or all of money now. held by the Government of the United States on a purchase contract of steamship Orion who are judgment creditors of the Black Star Line (Incorporated) for wages earned.”
It is a recognized rule of statutory construction that the title of an act is entitled to consideration, as showing the purpose and intent of the framers in its enactment.
Chief Justice Marshall in United States v. Fisher, 2 Cranch 358, announced the rule that:
“Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration.”
In United States v. Palmer, 3 Wheaton 610, 631, the court said:
“The title of an act can not control its words, but may furnish some aid in showing what was in the mind of the legislature.”
There can be no doubt that the jurisdictional act, taken as a whole, expresses the deliberate judgment of Congress that these funds in equity and good conscience belong to certain seamen, judgment creditors of the Black Star Line, Inc., for wages earned. This fact is further clearly indicated by the language used by the Senate committee in reporting the bill:
“ * * * The judgment creditors were therefore without remedy at law and are seeking relief from Congress in order that their judgments may be paid. The bills now pending before Congress are for that purpose, and it is maintained on behalf of the judgment creditors that the United States should not profit at the expense of these seamen who as the wards of the law are particularly favored in *310 the securing of their just compensation. * * * The money in question was money of the Black Star Line and was not forfeited by any action of the Shipping Board or by law to the United States Government. That being the case, these judgment creditors are clearly entitled to be
Counsel for the Government contend that the $21,624.66 covered into the Treasury by the Shipping Board are funds belonging to the Black Star Line, Inc., and that it is not within the power of Congress to legislate for their disposal to the plaintilf or to anyone else. In other words, that Congress has no power to authorize a creditor of the Black Star Line, Inc., to sue the United States in this court on a claim against the Black Star Line, Inc., for funds belonging to that company in the possession of the United States. It is urged that the most the act can do is to provide a forum for the adjudication of the plaintiff’s claim, and for rendering judgment according to established legal principles, and that since the plaintiff under the facts presented can not recover under established legal principles, judgment in his favor can not be awarded, as the act creates no liability on the part of the Government.
We do npt agree with the position of counsel for the Government. We think the authority of Congress to create a liability against the Government in this case is unquestioned, and that the only reasonable construction which can be placed on the language of the act of reference is that such liability is clearly created.
The authority of Congress to waive a legal defense to a claim and impose conditions under which a claimant may recover in the Court of Claims is upheld in an early decision of this court, Nock v. United States, 2 C. Cls. 451. The plaintiff in that case had brought an action against the Government for damages resulting from a breach of contract. Upon a trial of the case the court held (1 C. Cls. 71) the plaintiff was not entitled to recover. Afterwards the plaintiff petitioned Congress for relief. Upon a consideration of the petition, Congress referred the matter back to the Court of Claims by the following joint resolution:
*311 “Resolved by the Senate and Mouse of Representatives of the United States of America in Congress assembled, That the claim of Joseph Nock, for damages occasioned by the annulment of his contract ;!: *, be, and it is hereby, referred to The Court of Claims for its decision, in accordance with the principles of equity and justice: Provided, That said court do not render judgment for a greater sum than is contained in the report of Solicitor Comstock to the Senate, dated December 22, 1852.”
This resolution was brought before Congress by a report of a Senate committee, which in part states:
“ This case was afterwards referred to the Court of Claims, which decided adversely to the petitioner upon the technical legal grounds that as there was no legal obligation on the part of the Government under the contract to order more locks than it pleased, and consequently could rescind the contract whenever it pleased, and that the refusal to reassign the contract involved no legal obligation on the Government for damages.
“ Yet, in the opinion of this committee, there were equities existing between the Government and said Nock, arising out of this contract; * * *. It is therefore considered that the petitioner is entitled to relief, but as this committee have not the means or facilities to fully investigate the case, it recommends that the matter of the memorial of the petitioner be referred to the Court of Claims to decide upon the principles of equity and justice.”
Counsel for the Government contended that the resolution was unconstitutional and void because, (1) That Congress have no judicial powers which will authorize them to set aside the judgment of a court, and award a party a new trial; and, (2) That Congress have also limited the judgment which may be rendered to a certain amount, and that no such discretion to fetter or circumscribe the course of justice is by the Constitution vested in Congress.
In passing upon these points the court said:
“ * * * Congress are here to all intents and purposes the defendants, and as such they come into court through this resolution and say that they will not plead the former trial in bar, nor interpose the legal objection which defeated a recovery before, but that they thus consent upon the condition that the recovery, if any shall be had, shall not exceed a certain amount. The claimant has no rights here except under this consent, and he limits his demands accordingly. *312 * * * the defendants can not be sued except with their own consent; and Congress have the same power to give this consent to a second action as they had to give it to ,a first. “ It is further objected * * * that the 4 authority conferred upon the court to settle this claim according to the principles of justice and equity does not authorize the court to disregard plain principles of law.’ * * *
“ In the case now before us the report of the committee evidences the fact that Congress have intended to withdraw a harsh and technical defense, and to leave the court free to award damages for injuries actually sustained by the claimant. * * * ”
In all essential respects the jurisdictional act in the instant case, and the joint resolution referring the Nock case, appear to be practically the same. In each case claimants are authorized to sue on claims for which there is admittedly no legal liability on the part of the .Government, and in each there is a limitation placed upon the amount for which the court is authorized to enter judgment.
The authority of Congress to create a liability on the part of the Government where no legal liability in fact exists, and to waive any legal defenses on the part of the Government has not been questioned by this court in any of the numerous cases it has considered under special jurisdictional acts.
Cases cited by counsel for the Government do not lay down the rule that Congress is lacking in authority in this respect.
In United States v. Mille Lac Band of Chippewa Indians, 229 U. S. 498, it was not held that Congress was without authority to create such liability, but “The jurisdictional act makes no admission of liability, or of any ground of liability * * *. Nor does it contemplate that recovery may be founded upon any merely moral obligation * * (Act is set out in full in 47 C. Cls. 416, 417.)
In Iowa Tribe of Indians v. United States, No. 34677, decided by this court December 2, 1929 [68 C. Cls. 585], the court said:
“ The jurisdictional act contains certain provisions which we wish to emphasize by way of italics, viz: ’■for the determination of the amount, if any, which man}' be legally or eqwitably due said tribe * * * under any stipulations *313 or agreements, whether written or oral, * * * or for the failure of the United States to pay any money wMeh) may he legally or equitably due said tribe of Indians.’ The act as a whole clearly evinces a congressional intent to refer to this court the rights of the Indians growing out of the transaction wherein the Indians ceded their lands to the Government and the Government assumed obligations to pay therefor. Congress, by the legislation, does not, of course, concede a liability; that is for this court to determine upon principles of law and equity.”
This language, we think, falls far short of announcing the rule, contended for by counsel for the defendant, that Congress is without authority to create or recognize a liability on the part of the Government in special jurisdictional acts referring cases to this court. What the court said, and all that it said, was, that taking the particular act it was then considering, as a whole, no liability was .conceded. A fair inference from what the court said in this case, also in United States v. Mille Lac Band of Chippewa Indians, supra, is, we think, that Congress had the authority to concede, or create such liability if it had seen fit to do so, and that if liability had been conceded in the act it would have been binding on the court.
Haskell v. United Stated, 9 C. Cls. 410, cited by the defendant, does not support its contention. In that case Congress conferred authority on the Court of Claims, “ to adjudicate, on terms of equity and justice, the claims of the heirs and legal representatives of Leonidas Haskell, deceased, for stores furnished the Quartermaster’s Department of the Army of the United States.” It developed on the trial of the case that the claim had theretofore been settled and paid, and that receipt in full satisfaction of the claim had been given, and that there was no fraud or mistake in the settlement. The court held that the question involved was one of accord and satisfaction and that under the provisions of the jurisdictional act authorizing the court to adjudicate the claim on “terms of equity and justice,” the plaintiffs were not entitled to recover. But the court at the conclusion of its opinion said:
* * It can not be said here that equity ought to relieve against the bar created by the voluntary receipt in *314 full, for equity, equally with the law, recognizes and enforces such a bar, unless there are facts which justify the interposition of equitable relief to prevent- fraud or injustice; and such facts are not shown in this case. Had Congress directed this court to adjudicate the claim upon its merits, without regard to any technical defense, we might have felt warranted in going into a full investigation of all the facts, and passing upon them, irrespective of the receipt; but the terms of the special act do not seem to us to authorize such a proceeding.”
The court here, we think, from the language quoted clearly recognized the authority of Congress to waive, on the part of the Government, the former adjudication of the case, and to create a liability on the part of the Government on a claim, which under' the law had been satisfied and settled in full.
In Braden v. United States, 16 C. Cls. 389, the court makes an exhaustive review of cases, prior to that time referred to the court by special jurisdictional acts, and at the conclusion of the review and analysis of such cases says:
“But the majority of the court limit the expression of their opinion concerning the construction of these referring acts to the following conclusion, viz, that in each case the court will, from the language of the act, and from the nature of the case, and from the surrounding circumstances, endeavor to ascertain and carry out the legislative intent.”
If Congress had seen fit to do so it could have made a direct appropriation to the plaintiff and other judgment creditors of the Black Star Line for the amounts due them as such judgment creditors. Congress has the power to appropriate money for the payment of claims based upon eonsiderations of moral obligations or honorary obligations.
“ * * * Payments to individuals, not of right, or of a merely legal claim, but payments in the nature of a gratuity, yet having some feature of moral obligation to support them, have been made by the Government by virtue of acts of Congress, appropriating the public money, ever since its foundation. Some of the acts were based upon considerations of pure charity.
$ $ ‡ ‡ $
“ In regard to the question whether the facts existing in any given case bring it within the description of that class *315 of claims which Congress can and ought to recognize as founded upon equitable and moral considerations and grounded upon principles of right and justice, we think that generally such question must in its nature be one for Congress to decide for itself. Its decisions recognizing such a claim and appropriating money for its payment can rarely, if ever, be the subject of review by the judicial branch of the Government. * * * ” United States v. Realty Company, 163 U. S. 427.
If Congress has the power to pay these claimants by making an appropriation out of the Treasury, it seems it would undoubtedly have the authority to enact a statute recognizing such moral obligation, assume liability for its payment, and vest the court with authority to hear and adjudicate such claims and to enter judgment in favor of those to whom the money belongs. The claimants in either case would receive their money by virtue of an act of Congress.
The United States as a sovereign is suable only to the extent and in such manner as it consents to be sued. Congress, under the Constitution, is the branch of the Government vested with the authority of saying when and in what oases the Government consents to be sued, and to what extent and under what conditions it assumes liability. Exercising that authority, the jurisdictional act under which the plaintiff’s claim is being considered was enacted.
Under the rule announced in Braden v. United States, supra, that the “ court will from the language of the act, and from the nature of the case, and from the surrounding circumstances, endeavor to ascertain and carry out the legislative intent,” the plaintiff is entitled to judgment. •
The congressional intent is, we think, unmistakable. It appears from the precise words of the title of the act “ for the relief of certain seamen * * * who are judgment creditors of the Black Star Line (Incorporated) for wages earned,” from the unqualified statement in the report of the Senate committee, “these judgment creditors are entitled to be paid,” and from the language of the act itself, “ the Court of Claims is vested with full jurisdiction * * * to render judgment for such money or parts thereof as in equity and good conscience any person * * *, may be entitled to receive.”
*316 The plaintiff was a seaman. He is a judgment creditor of the Black Star Line for wages earned. The amount due him as such judgment creditor is shown to be the sum of!' $5,836.64.
Congress by the jurisdictional act assumes on behalf of.' the Government a liability to pay the plaintiff the amount., due him and has empowered the court to enter judgment therefor.
The plaintiff is entitled to recover the sum of $5,836.64 and judgment for that amount is awarded. It is so ordered..
LittletoN, Judge; GreeN, Judge; and Booth, Chief Justice, concur.