deems warranted. After such further consideration by the Commission, further proceedings by appeal may be had.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges, concur.

## COLUMBIA HOSPITAL OF RICHLAND COUNTY v. UNITED STATES.
### Congressional No. 17872.

United States Court of Claims.
July 13, 1953.

Hunter A. Gibbes, Columbia, S. C., for plaintiff.

Wilson Myers, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This is a Congressional reference case. We are asked to determine and report to the House of Representatives the amount, if any, legally or equitably due from the United States to the claimant. The facts are set out in detail in the findings.

On March 7, 1942, three agents of the defendant's Alcohol Tax Unit, Bureau of Internal Revenue, Department of the Treasury, conducted a search for an illegal whiskey still in Lexington County, South Carolina. They had no warrant of arrest. At the request of S. S. Sligh, the agent in charge, J. A. Watts, deputy sheriff of that county, was aiding in the investigation.

On approaching an oak thicket they discovered an illegal whiskey still in operation and arrested its attendant, Harold Sharpe. Hearing the sound of wood cutting nearby, Investigator Sligh directed Deputy Sheriff Watts to apprehend the wood cutter. A scuffle ensued, and a person later identified as Halsford V. Sharpe, a co-operator of the still, attempted to escape and was shot once by a pistol in the hands of the deputy sheriff.

Investigator Sligh, concluding that the wound was serious, transported Sharpe to plaintiff's hospital in the adjoining county of Richland, which had the best available facilities for emergency treatment.

On previous occasions the Alcohol Tax Unit had brought wounded prisoners to plaintiff's hospital for care and treatment during the time they were in legal custody and payment had been made for the services rendered.

Sharpe is paralyzed from the waist down. He cannot operate a wheel chair and he is totally and permanently disabled. He is and will continue to be a bed-ridden patient.

Sharpe was indicted but on September 16, 1942, the United States District Judge for that area dismissed the indictment stating that "because of the defendant's physical condition it is not the intention of the United States Attorney to further proceed with the prosecution of the case." The patient was discharged from the marshal's custody on September 17, 1942. On the same day the United States Marshal notified the plaintiff in writing that he would no longer be responsible for any bills incurred in connection with Sharpe. The defendant through the United States Marshal paid the hospital bill for the care and treatment of Sharpe from March 7 to September 17, 1942, the date of his discharge from custody.

Sharpe is in a helpless condition and must be cared for somewhere. The Board of Commissioners of Lexington County, where the patient resided at the time of his injury, has refused to contribute or to assume responsibility for his care on the ground that he is not a legitimate charge of that county under the circumstances.

He is thus left as the uninvited guest of the hospital. The defendant, whose representatives are responsible for the shooting, and the governing board of the county where the conditions prevailed that brought it about, have both washed their hands of the responsibility, and yet there he is, as unwelcome as "the man who came to dinner."

Can they turn him out? Of course not; that would be inhuman. He has no relatives able or willing to care for him. He cannot read or write. Yet he is helpless and in a civilized country must be treated and cared for. Who shall stand the loss— the Federal Government whose officials, perhaps justifiably but nevertheless actually, directed the action which caused his condition, or the innocent bystander wholly without responsibility for the events which caused his condition? This hospital is a tax-supported institution paid for by and intended to serve the people of Richland County. It naturally limits its charity patients to those residing in that county. Nevertheless, at the request of the United States it accepted a patient who had been brought to it from beyond the limits of its jurisdiction. The officials of the Government claim they have no authority to pay the expenses after an indictment has been dismissed and the man is out of custody, and that therefore there is no legal liability on the part of the United States. It cites the following statutes as being the ones that authorize the payment of subsistence and expenses of prisoners:

18 U.S.C. § 4006. *"Subsistence for prisoners.*

"The Attorney General shall allow and pay only the reasonable and actual cost of the subsistence of prisoners in the custody of any marshal of the United States, and shall prescribe such regulations for the government of the marshals as will enable him to determine the actual and reasonable expenses incurred."

18 U.S.C. § 4007. *"Expenses of prisoners.*

"The expenses attendant upon the confinement of persons arrested or committed under the laws of the United States, as well as upon the execution of any sentence of a court thereof respecting them, shall be paid out of the Treasury of the United States in the manner provided by law."

Defendant does not question its liability to defray the expenses incurred for the care and treatment of prisoners while under arrest and in the custody of the United States. It argues conversely that no liability accrues after a prisoner is discharged from custody, and that the contractual relationship arising between the defendant and the hospital is limited by the statutory provisions authorizing such expenditures.

■ From a legal viewpoint this argument is unanswerable. Nor can the officials of the Government be criticized for not paying this expense after the indictment was dismissed because such officials had no legal authority to do so. Even had they agreed to do so it would have been without the scope of their authority. Eastern Extension, Australasia & China Tel. Co. v. United States, 251 U.S. 355, 40 S. Ct. 168, 64 L.Ed. 305. Anyone dealing with an agent of the Government must be held to have notice of the limitation of his authority. Coleman v. United States, 6 Cir., 100 F.2d 903; Wilber National Bank of Oneonta, N. Y. v. United States, 294 U. S. 120, 55 S.Ct. 362, 79 L.Ed. 798.

Plaintiff in effect concedes this much, but asserts that there is a moral obligation on the part of the United States to reimburse it for the reasonable and necessary accumulated charges which it has incurred, and to continue to do so in the future, or to remove Sharpe to a Federal hospital or institution and thus relieve the plaintiff hospital of the necessity and expense of further caring for a helpless human being for whose condition it is in no way responsible.

Defendant further contends that this is not an equitable claim, but rather a claim for a gratuity.

We had occasion to consider in a previous Congressional reference case, Burkhardt v. United States, 84 F.Supp. 553, 113 Ct.Cl. 658, the meaning of the term equitable as it was there used. We quote the following from 84 F.Supp. at page 559, 113 Ct.Cl. at page 667 of that case:

"It has also been established by the decisions of this Court and the Supreme Court that Congress not only has authority to create a cause of action where none existed before but to make an appropriation to pay such claim. Garrett v. United States, 70 Ct.Cl. 304.

"In Pope v. United States, 323 U.S. 1, 9, 65 S.Ct. 16, 21, 89 L.Ed. 3, the Supreme Court said:

" 'We perceive no constitutional obstacle to Congress' imposing on the Government a new obligation where there had been none before, * * *. The power of Congress to provide for the payment of debts, conferred by § 8 of Article I of the Constitution, is not restricted to payment of those obligations which are legally binding on the Government. It extends to the creation of such obligations in recognition of claims which are merely moral or honorary.'

"We are therefore of the opinion that the term 'equitable claim' as used in 28 U.S.C.A. § 2509, is not used in a strict technical sense meaning a claim involving consideration of principles of right and justice as administered by courts of equity, but the broader moral sense based upon general equitable considerations."

We do not think that it is fair or just to require the Columbia Hospital, which is a non-profit, tax-supported institution established for the care of its own people in a single county, to sustain the loss and to continue to sustain it during the patient's lifetime. To require it to do so would be to put a penalty on those fine, generous, humanitarian instincts which are the fabric of what we call civilization. We say require, because that is just what the facts and circumstances of this case mean. To turn a human being out to suffer and die is absolutely unthinkable.

This incident arose in the enforcement of a Federal law. The man was charged with a Federal offense. The shooting was done by an officer who was acting under the direction of an authorized officer of the United States. The hospital accepted the patient at the request of the officer of the United States as an emergency case. Then it had no choice; now it has no choice.

■ The entire incident occurred in another county. The violation of the Federal statute occurred in another county. It may well be that the officials of that county because of the fact that they permitted the conditions to prevail that brought this incident all about, and because of the fact that the entire affair was within the borders of that county, should share this expense. But as between the plaintiff and

the defendant we have no doubt that there is a moral obligation on the part of the United States Government to compensate the plaintiff for the reasonable and necessary expense of the care and treatment of Sharpe. We think it should continue to do so in the future, or in lieu thereof arrange a transfer to some Federal institution that is equipped to care for the patient.

We will not go into the refined distinction as to whether it is an equitable or a moral obligation, or whether such payment would be a mere gratuity. Regardless of whether it is classified as an equitable obligation or a gratuity, we think the circumstances of this case fully justify this course of action, and we recommend it to the Congress.

From September 17, 1942, when he was dismissed from custody, through October 18, 1952, the reasonable and necessary expense of Sharpe's care and treatment amounted to $18,322.92, no part of which has been paid.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

## JENSCH v. UNITED STATES.

### No. 48592.

United States Court of Claims.
July 13, 1953.

Samuel W. Jensch, pro se.

Wilson Myers, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff was a reserve officer in the United States Coast Guard. He was relieved from active duty on July 26, 1946. He sues for the cost of transportation of some of his household goods from Hudson, Wisconsin, a town near Minneapolis, Minnesota, and of others from Arlington, Virginia, all to Washington Grove, Maryland, within one year after he was released from active duty.

Plaintiff's right to recover depends upon the Pay Readjustment Act of 1942, 56 Stat. 359, as amended by the Act, U.S.Code Cong.Service, 1942, pp. 559, 565, of August 2, 1946, 60 Stat. 858, 860; 37 U.S.C. 112, and the regulations issued pursuant thereto. Section 12, as amended, reads in part as follows:

"* * * When any officer * * having dependents as defined in section 104 of this title, is ordered to make a permanent change of station, the United States shall furnish transportation in kind from funds appropriated for the transportation of the * * * Coast Guard * * * to his new station for such dependents: * * And provided further, That in lieu of transportation in kind authorized by this section for dependents, the Presi-