NATIONAL ELECTRONIC LABORA-
TORIES, INC.

v.

UNITED STATES.

No. 279–57.

United States Court of Claims.
Jan. 20, 1960.

Robert Sheriffs Moss, Washington, D. C., for plaintiff.

Clare E. Walker, New York City, with whom was Acting Asst. Atty. Gen. George S. Leonard, for defendant.

LITTLETON, Judge (Retired).

In November 1951, the plaintiff and the Signal Corps of the Army entered into a contract, hereinafter referred to as No. 7052, which required plaintiff to supply seven shutter assemblies with specified appurtenances, for $31,677.61. A few days later the number of units was increased from seven to forty-one, and the contract price was fixed at $180,-320.69. The shutter assemblies were delivered to, and accepted and paid for by the Signal Corps.

The contract was a negotiated contract, and it contained a provision for a revision of the contract price by agreement if agreement could be arrived at. If the parties could not agree on a revised price, their disagreement was to be treated as a disagreement as to a question of fact, which should be disposed of in accordance with Article 12, the Disputes article, of the contract. That meant that the contracting officer would unilaterally determine a revised price, and that his determination might be appealed by the plaintiff to the Secretary of the Army, or his representative, which would be the Armed Services Board of Contract Appeals.

On November 16, 1955, the contracting officer, over plaintiff's objections, unilaterally revised the contract price downward from $181,320.69 to $136,367.27. The plaintiff appealed and the Board of Contract Appeals further revised the price downward to $114,077.07.

The plaintiff, also in November 1951, entered into another shutter assembly contract with the Signal Corps, for a price of $102,428.20. This contract will be referred to as No. 31136. It was, in its terms and the circumstances of its negotiation, like contract No. 7052. It was completed, the contract price was paid, price revision discussions resulted in disagreement, the contracting officer unilaterally revised the price downward from $102,033.32 to $71,042.84, the plaintiff appealed to the Board of Contract Appeals, and the Board further revised the price downward to $64,869.13.

The plaintiff has not repaid to the Government the amounts by which the contract prices were reduced by the revisions. The Government has, however, collected $2,271.60 from plaintiff by offsets against amounts otherwise due plaintiff.

In its petition plaintiff asserts the invalidity of the price revision provisions of its contracts, on the ground that they violated certain provisions of statutes and applicable regulations, and that the plaintiff was misled into signing the contracts containing the price revision provisions by misrepresentations of the

Government's contracting officer. It also alleges that the Board of Contract Appeals arbitrarily, capriciously and erroneously revised the contract prices downward in the amounts recited above. By way of relief it asks that the contracts be reformed to eliminate their price revision provisions, and that it be given a judgment for the $2,271.60 which the Government has collected from it by making offsets against amounts otherwise due to it.

In its motion for a summary judgment the plaintiff presents only the question of the legal invalidity of the price revision provisions of its contracts. It says that those provisions were (1) illegal because they converted the contracts into "cost-plus-a-percentage-of-cost" type contracts which were prohibited by statute, and (2) unenforceable because, under the statutes and regulations, the contracting officer was without authority to insert them in the contracts, such authority, if it existed at all, being lodged in higher echelons of the Army.

The Government asserts the legality of the price revision provisions and authority of the contracting officer to insert them in the contracts.

■ The Armed Services Procurement Act of 1947, 62 Stat. 21, 41 U.S. C. § 153(b) [1] says

> "The cost-plus-a-percentage-of-cost system of contracting shall not be used, and in the case of a cost-plus-a-fixed-fee contract the fee shall not exceed 10 per centum of the estimated cost of the contract, exclusive of the fee * * *."

If, in the face of this statute, a concededly cost-plus-a-percentage-of-cost contract were made and performed, a troublesome question would arise as to what to do about it. To forfeit only the percentage of cost and allow recovery of the cost would not adequately serve the purpose of the statute, since the vice at which the statute is aimed is the increased cost which the contractor might allow to accrue in order to obtain the percentage of the increased cost. It would seem

that, if total forfeiture were regarded as too harsh a penalty, compensation for performance should be on a *quantum meruit* basis, in disregard of the contract.

In the instant case, as we have seen, the plaintiff asserts and the Government denies, that the contracts with their price revision provisions were, in effect, cost-plus-a-percentage-of-cost contracts. The plaintiff would have the court purge them of their asserted illegality by striking out the price revision provisions and letting the rest of the contracts stand, with their lump sum prices unimpaired. It becomes obvious that contracts not intended to be cost-plus-a-percentage-of-cost contracts, and which set a fixed price for performance, but which, because of other provisions in them, have some of the qualities of the forbidden type of contract, would present difficult questions as to equitable compensation for their performance.

■ We now consider, in some detail, the price revision provisions of the plaintiff's contracts, to determine whether they were in violation of section 153(b). Hereafter we will speak of contract No. 7052, with which contract No. 31136 was identical, for instant purposes. The contract provided that within 60 days after its completion, the contractor should file a statement showing his costs of performance, and the contracting officer should have access to the contractor's books, records and accounts, in order to verify the statement. The parties would then attempt to negotiate a "reasonable revised price" which "will constitute fair and just compensation to the contractor for the performance of this contract." The contract said:

> "In determining the extent of any estimated allowance for profit to be taken into account in fixing such revised price, consideration will be given to the extent to which the Contractor has performed the contract with efficiency, economy and ingenuity. In no event shall the revised price exceed * * *."

1. Now 10 U.S.C.A. § 2306.

The price set as the upper limit of revision was, in fact, the price at which the plaintiff had first offered to perform the contract, which offer had been rejected by the contracting officer, after which the figure of $181,320.69 had been agreed upon. No lower limit of revision was set, as might be surmised from the severe cuts which the contracting officer and the Board of Contract Appeals, in their turns, made in the plaintiff's contract figures.

Wherein did this price revision provision make the plaintiff's contract legally identical with the cost-plus-a-percentage-of-cost contracts forbidden by section 153(b)? The plaintiff says that it would induce a contractor to let his costs run high, because if he kept his costs low, the amount of profit which he would be allowed in the revision would be proportionately low. We think that what the plaintiff says is true, and that when the Board of Contract Appeals cut the contract price down from $181,320.69 to $114,077.07 it would not have included as much profit in that smaller figure as the contracting officer had included in his original estimated figure of $181,320.69.

The Government points to the provision, which we have quoted above, saying that the efficiency, economy and ingenuity with which the contractor had performed the contract would be taken into consideration in determining how much profit the contractor should be allowed. It says that this provision would safeguard the Government against the intentional or negligent inflation of costs. It would have a tendency to do so, but it is doubtful whether it would be practicable to audit a contractor's costs sufficiently closely to catch anything other than obvious padding. The Government points also to the upper limit set in the contract provision relating to revision. In view of that provision, a contractor who allowed his costs to run too high might find that they had eaten up his profit, or that, without any profit, the upper limit prevented him from recovering his costs.

Section 153(b) expressly authorized cost-plus-a-fixed-fee contracts. Congress regarded it as impracticable for the armed services to procure what they needed on the basis of contracts with prices fixed in advance. But once contracts whose price depended upon actual future costs were permitted, it was inevitable that there would be a certain amount of indifference to costs, on the part of contractors. We do not see enough difference between the expressly permitted cost-plus-fixed-fee contracts, and the fixed-price-subject-to-revision contracts of the plaintiff, to justify us in regarding the latter as in violation of section 153(b).

Contracts with provisions for price revision have been widely used in the Government's procurement. Many of them have provided for price revision after a partial performance, when experience has shown what costs are, or are likely to be. The plaintiff points out that its contracts called for price revision after completion of the contracts, and says that there is a special vice in such "wholly retroactive" price revision provisions. There probably is some difference but not enough, we think, to justify us in treating the latter type of price revision provisions as illegal.

■ Plaintiff's second point is that, even if higher authority could have done so, the contracting officer was not authorized, under the applicable regulations, to insert into the contracts the type of price revision provisions which are here in question. As to this point, we think such restrictions as there may have been upon the authority of a contracting officer were for the protection and benefit of the Government alone. If the plaintiff is right as to the contracting officer's exceeding his authority, the Government might have repudiated his acts. But it did not do so. It ratified the contracts and is relying on them, and the plaintiff cannot gain an advantage from regulations not designed for its benefit. Perkins v. Lukens Steel Co., 310 U.S. 113, 129, 60 S.Ct. 869, 84 L.Ed. 1108; Hartford Accident and Indemnity Co. v. Unit-

ed States, 127 F.Supp. 565, 130 Ct.Cl. 490, 493.

The foregoing discussion indicates that we shall deny plaintiff's motion for summary judgment. The Government has moved for summary judgment on its counterclaim for the amounts by which the contract prices were revised downward, minus the small sums which the Government has already recovered by way of offsets. The plaintiff urges that even if its instant motion for summary judgment on the ground of legal issues, be denied, there are factual issues which, if found in plaintiff's favor, would entitle it to reformation of its contracts, eliminating the price revision provision from them, or would produce a determination that the price revision actually made was not justified in fact, and that the price revision should have been upward and not downward.

Plaintiff alleges in its petition in relation to contract No. 7052 that the contracting officer, having received plaintiff's original offer, represented to plaintiff that if it would reduce its price to a specified figure, that figure would be the contract price, but the contract would contain a provision that if performance at that price proved to be unprofitable, the price would be revised upward to a profitable level, but not higher than the plaintiff's original offer, and would in no event be reduced below the contract price. Plaintiff alleges that the contracting officer had no authority to agree to the type of price revision article described by him, but that plaintiff, relying on the contracting officer's representations, believed that he had such authority, and therefore reduced its offered price. The contracting officer, so plaintiff alleges, in violation of his agreement surreptitiously inserted into the contract the price revision article the provision for unlimited price revision downward, and limited price revision upward; plaintiff did not become aware of the actual terms of the contract until price revision negotiations were initiated by the Government after the contract had been performed. The petition makes similar allegations with regard to contract No. 31136.

The record of the proceedings before the Armed Services Board of Contract Appeals has been stipulated by the parties into our record. The testimony of the plaintiff's president before the Board was that if he had read the price revision article at the time he signed the contract, he had not understood it, or that he had not read it "in detail." Communications between the plaintiff and the contracting officer indeed show that plaintiff's interest was in the ceiling price, up to which the contract price could be revised. It may be that the possibility that the price revision might be downward never occurred to plaintiff. But the revision provision was not very long nor very complicated, and spoke just as plainly about a price decrease as about a price increase.

■ With regard to plaintiff's claim of a right to reformation of the contract on the ground of misrepresentations made by the contracting officer, several observations may be made. Plaintiff says, correctly we think, that the contracting officer did not have the authority which he allegedly represented that he had, i. e., to make a contract which could be revised upward but not downward. The contract could not, therefore, be reformed to make it read as plaintiff says he intended it to read. There is no doubt that plaintiff intended to make a contract with a price revision provision in it. If, under the regulations, the contracting officer had no authority to contract for a price revision upward, without also providing for a price revision downward, if the cost data pointed downward, plaintiff was charged with knowledge of the extent of the contracting officer's authority. Gay Street Corp. v. United States, 127 F.Supp. 585, 130 Ct. Cl. 341; Columbia Hospital of Richland County v. United States, 113 F.Supp. 691, 125 Ct.Cl. 712; Kelly v. United States, 91 F.Supp. 305, 116 Ct.Cl. 811, certiorari denied 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623; Riethmiller v. United States, 91 F.Supp. 305, 101 Ct.Cl. 495;

**342**

Alliance Construction Co. v. United States, 79 Ct.Cl. 730. A Government official cannot enlarge his authority by misrepresenting its extent.

■ When one executes a contract, plain on its face, containing a provision which he greatly desires and which he undoubtedly has read, and there is, in the wording of the contract another provision interwoven with the former one, he undertakes a heavy burden when he seeks to show that he was not aware of the latter one. One might be persuaded that he gave it no attention because he did not expect the contingency which would make it important to occur. In such circumstances we think the equitable remedy of reformation is not appropriate, particularly where it would not be possible to rewrite the contract into the form in which it was allegedly intended to be written. Our conclusion is, then, that a trial of the issue of whether the alleged misrepresentation in fact occurred would be futile, because, regardless of its outcome, reformation would not be granted.

■■ As we have said, plaintiff's petition alleges that the price revision made by the Armed Services Board of Contract Appeals was made "arbitrarily, capriciously and erroneously." In its context, this allegation seems to mean that the Board did not accept the plaintiff's views as to the legality, under the statute and the regulations, of the price revision articles of the contracts. As we have said above, we do not accept the plaintiff's views on these matters. If plaintiff means to say that the Board acted arbitrarily in making so extensive a price revision as it made, plaintiff alleges no facts which, if proved, would support that averment. A bare allegation of arbitrary action is not sufficient to sustain a petition against a motion for summary judgment. Volentine and Littleton v. United States, 145 F.Supp. 952, 136 Ct. Cl. 638, 643.

Plaintiff's motion for summary judgment is denied. Defendant's similar motion is granted, and defendant may have judgment on its counterclaim. Plaintiff's petition will be dismissed. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.